Douglas J. Campion, SBN #75381
Email: doug@djcampion.com
LAW OFFICE OF DOUGLAS J. CAMPION
409 Camino Del Rio South, Suite 303
San Diego, California 92108
Telephone: (619) 299-2091
Facsimile: (619) 858-0034

Jonathan D. Selbin, SBN 170222
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013
Telephone: (212) 355-9500
Facsimile: (212) 355-9592

[Additional Counsel Appear on Signature Page]

*Attorneys for Plaintiffs and the Proposed Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHENIE ROSE, on behalf herself and all others similarly situated,<br><br>       Plaintiff,<br><br>      v.<br><br>BANK OF AMERICA CORPORATION, and FIA CARD SERVICES, N.A.,<br><br>       Defendants.<br><br>CAROL DUKE AND JACK POSTER, on behalf of themselves and all others similarly situated,<br><br>       Plaintiffs,<br><br>      v.<br><br>BANK OF AMERICA, N.A.; BANK OF AMERICA CORPORATION; AND FIA CARD SERVICES, N.A.,<br><br>       Defendants. | Case No. 5:11-cv-02390-EJD (PSG)<br><br>**PLAINTIFFS' MOTION AND MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND COSTS AND FOR SERVICE AWARDS TO THE CLASS REPRESENTATIVES**<br><br>Date: April 4, 2014<br>Time: 9:00 a.m.<br>Courtroom: 4, 5th Floor<br>Judge: Edward J. Davila |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ...................................................................... 1

I. INTRODUCTION ........................................................................................ 1

II. BACKGROUND ........................................................................................... 3

    A. The Settlement Represents an Outstanding Result for the Class. ........................ 3

        1. The Prospective Changes Benefitting the Class. ........................................ 3

        2. The Common Settlement Fund Achieved for the Class. .............................. 4

    B. Class Counsel Undertook Considerable Risk in Prosecuting this Action. ............. 4

    C. Class Counsel Minimized Duplicative Work. .................................................... 6

III. ARGUMENT AND AUTHORITY ............................................................... 7

    A. The Requested Fee Award is Fair, Reasonable, and Justified. ............................ 7

        1. The Requested Fee is Presumptively Reasonable because it Resulted from Arm's Length Negotiations. ............................................................. 8

        2. The Court Should Apply the Percentage-of-the-Fund Method. .................... 8

        3. Class Counsel's Fee Request is Warranted Under the Percentage-of-the-Fund Method. ........................................................................... 10

            a. Class Counsel have Obtained an Excellent Result. ........................... 11

            b. The Risks of Litigation Supports the Requested Fee. ....................... 13

            c. The Skill Required and Quality of Work Performed Supports the Requested Fee. ................................................................. 14

            d. Class Counsel's Undertaking of the Actions on a Contingency-Fee Basis Supports the Requested Fee. .............................. 15

            e. The Requested Fee Comports with Fees Awarded in Similar Actions. ........................................................................... 16

        4. A Lodestar Plus Multiplier Cross-Check Supports the Requested Fee. ...... 17

            a. Class Counsel's Lodestar is Reasonable. ......................................... 17

            b. A Multiplier is Warranted. .............................................................. 19

    B. Class Counsel Are Not Seeking Reimbursement of their Costs on Top of the Fee Award, Although Such Reimbursement Would be Justified. .................. 21

    C. The Named Plaintiffs' Service Awards Are Reasonable. .................................. 21

IV. CONCLUSION ........................................................................................... 23

# TABLE OF AUTHORITIES

**Page**

## <u>CASES</u>

*Adams v. AllianceOne Receivables Mgmt., Inc.*,
No. 3:08-cv-00248-JAH-WVG (S.D. Cal. Sept. 28, 2012) .................................................. 16, 20

*Antonopulos v. N. Am. Thoroughbreds, Inc.*,
No. 87-0979G (CM), 1991 U.S. Dist. LEXIS 12579 (S.D. Cal. May 6, 1991) ........................ 16

*Behrens v. Wometco Enter., Inc.*,
118 F.R.D. 534 (S.D. Fla. 1988), aff'd,
899 F.2d 21 (11th Cir. 1990) ................................................................................................... 9

*Bellows v. NCO Financial Systems, Inc.*,
No. 07-CV-1413 W (AJB), 2009 U.S. Dist. LEXIS 273
(S.D. Cal. Jan 5, 2009) ........................................................................................................... 16

*Blum v. Stenson*,
465 U.S. 886 (1994) ................................................................................................................ 19

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) .................................................................................................................. 7

*Craft v. County of San Bernardino*,
624 F. Supp. 2d 1113 (C.D. Cal. 2008) ............................................................................ 19, 20

*Di Giacomo v. Plains All Am. Pipeline*,
No. H-99-4137, 2001 U.S. Dist. LEXIS 25532
(S.D. Tex. Dec. 18, 2001) ....................................................................................................... 20

*Fitzgerald v. City of Los Angeles*,
No. CV 03-01876 NM, 2003 U.S. Dist. LEXIS 27382
(C.D. Cal. Dec. 8, 2003) ......................................................................................................... 23

*Fulford v. Logitech, Inc.*,
No. 08-cv-02041 MMC, 2010 U.S. Dist. LEXIS 144437
(N.D. Cal. Mar. 5, 2010) ........................................................................................................ 19

*Garner v. State Farm*,
No. CV 08 1365 CW, 2010 U.S. Dist. LEXIS 49482
(N.D. Cal. Apr. 22, 2010) ....................................................................................................... 11

*Gene And Gene LLC v. BioPay LLC*,
541 F.3d 318 (5th Cir. 2008) ............................................................................................... 5, 13

*Glass v. UBS Fin. Servs.*,
No. C-06-4068 MMC, 2007 U.S. Dist. LEXIS 8476
(N.D. Cal. Jan. 26, 2007) ........................................................................................................ 17

*Grannan v. Alliant Law Group, P.C.*,
No. C10-02803 HRL, 2012 U.S. Dist. LEXIS 8101
(N.D. Cal. Jan. 24, 2012) ........................................................................................................ 16

*Hanlon v. Chrysler Corp*,
150 F.3d 1011 (9th Cir. 1998) ...................................................................................... 8, 10, 17

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) ............................................................................................................ 8, 11

**TABLE OF AUTHORITIES**
(continued)

Page

*Hopson v. Hanesbrands Inc.*,
No. CV-08-0844 EDL, 2009 U.S. Dist. LEXIS 33900
(N.D. Cal. Apr. 3, 2009) ............................................................................................. 23

*In re Activision Sec. Litig.*,
723 F. Supp. 1373 (N.D. Cal. 1989) ..................................................................... 9, 10

*In re Apple Computer, Inc. Derivative Litig.*,
No. C 06-4128 JF (HRL), 2008 U.S. Dist. LEXIS 108195
(N.D. Cal. Nov. 5, 2008) .................................................................................................. 8

*In re AXA Rosenberg Investor Litig.*,
No. 11-cv-00536-JSW, Dkt. No. 73 (N.D. Cal. April 2, 2012) ................................ 19

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) ......................................................................................... 8

*In re Heritage Bond Litig. v. U.S. Trust Co. of Tex., N.A.*,
No. 02-ML-1475-DT(RCx), 2005 U.S. Dist. LEXIS 13627
(C.D. Cal. June 10, 2005) .............................................................................................. 16

*In re M.D.C. Holdings Sec. Litig.*,
No. CV 89-0090 E (M), 1990 U.S. Dist. LEXIS 15488
(S.D. Cal. Aug. 30, 1990) ............................................................................................... 16

*In re Media Vision Tech. Sec. Litig.*,
913 F. Supp. 1362 (N.D. Cal. 1995) ............................................................................ 21

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000) ................................................................................. 13, 16

*In re Mercury Interactive Corp. Sec. Litig.*,
618 F.3d 988 (9th Cir. 2010) ................................................................................... 1, 7

*In re Omnivision*,
559 F. Supp. 2d 1036 (N.D. Cal. 2007) ............................................................... passim

*In re Public Service Co.*,
No. 91-0536M, 1992 U.S. Dist. LEXIS 16326 (S.D. Cal. July 28, 1992) ................. 16

*In re Trans Union Corp. Privacy Litig.*,
211 F.R.D. 328 (N.D. Ill. 2002) ...................................................................................... 5

*In re Washington Pub. Power Supply System Sec. Litig.*,
19 F.3d 1291 (9th Cir. 1994) ................................................................. 7, 9, 15, 20

*Kerr v. Screen Extras Guild, Inc.*,
526 F.2d 67 (9th Cir. 1975) ................................................................................... 17, 20

*Knight v. Red Door Salons, Inc.*,
No. 08-01520 SC, 2009 U.S. Dist. LEXIS 11149
(N.D. Cal. Feb. 2, 2009) ........................................................................................ 11, 16

*Linney v. Cellular Alaska P'ship*,
No. C-96-3008 DLJ, 1997 U.S. Dist. LEXIS 24300
(N.D. Cal. July 18, 1997) ...................................................................................... 12, 13

*Lo v. Oxnard European Motors, LLC*,
No. 11CV1009 JLS, 2012 U.S. Dist. LEXIS 73983
(S.D. Cal. May 29, 2012) ............................................................................................... 16

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*Lopez v. Youngblood*,
No. CV-F-07-0474 DLB, 2011 U.S. Dist. LEXIS 99289
4   (E.D. Cal. Sept. 1, 2011) ........................................................................ 10, 20

5

*Maley v. Del Global Techs. Corp.*,
186 F. Supp. 2d 358 (S.D.N.Y. 2002) ................................................................ 20

6

*Meyer v. Portfolio Recovery Associates*,
707 F.3d 1036 (9th Cir. 2012) ............................................................... 5, 13

7

*Mills v. Electric Auto-Lite Co.*,
396 U.S. 375 (1970) ............................................................................. 21

8

9   *Moore v. Verizon Communs., Inc.*,
No. 09-1823 SBA (JSC), 2013 U.S. Dist. LEXIS 170027
10   (N.D. Cal. Nov. 27, 2013) ........................................................................ 19

*Nwabueze v. AT&T Inc.*,
11   No. C 09-01529 SI, 2014 U.S. Dist. LEXIS 11766
(N.D. Cal. Jan. 29, 2014) ........................................................................ 19

12   *Odrick v. UnionBanCal Corp.*,
No. C 10-5565 SBA, 2012 U.S. Dist. LEXIS 171413
13   (N.D. Cal. Dec. 3, 2012) ........................................................................ 23

14   *Parker v. Time Warner Entm't Co., L.P.*,
331 F.3d 13 (2d Cir. N.Y. 2003) ................................................................... 5

15   *Rodriguez v. West Publishing Corp.*,
563 F.3d 948 (9th Cir. 2009) ............................................................... 21, 22

16

*Ross v. Trex Co.*,
17   No. 09-cv-00670-JSW, 2013 U.S. Dist. LEXIS 177732
(N.D. Cal. Dec. 16, 2013) ........................................................................ 19

18   *Satterfield v. Simon & Schuster, Inc. et al.*,
No. 06-cv-2893 (N.D. Cal. Aug. 6, 2010) ....................................................... 16, 22

19

*Staton v. Boeing Co.*,
20   327 F.3d 938 (9th Cir 2003) ............................................................. 7, 11, 21

21   *Steiner v. Am. Broad. Co.*,
248 Fed. Appx. 780 (9th Cir. Cal. 2007) ........................................................ 19

22   *Stop & Shop Supermarket Co. v. SmithKline Beecham Corp.*,
No. 03-4578, 2005 U.S. Dist. LEXIS 9705
23   (E.D. Pa. May 20, 2005) ........................................................................ 20

*Swedish Hosp. Corp. v. Shalala*,
24   1 F.3d 1261 (D.C. Cir. 1993) ............................................................... 9, 20

25   *Van Vranken v. Atlantic Richfield Co.*,
901 F. Supp. 294 (N.D. Cal. 1995) ................................................................ 22

26   *Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2002) ............................................................. passim

27

*Walsh v. Kindred Healthcare*,
28   No. C 11-00050 JSW, 2013 U.S. Dist. LEXIS 176319
(N.D. Cal. Dec. 16, 2013) ........................................................................ 12, 19

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page**

3

<u>**RULES**</u>

4

Fed. R. Civ. P. 23(e)...................................................................................................... 7

Fed. R. Civ. P. 23(h) .................................................................................................... 11

5

<u>**TREATISES**</u>

6

Federal Judicial Center, *Manual for Complex Litigation*,
  § 27.71 (4th ed. 2004) ............................................................................................. 11

7

Newberg on Class Actions
  § 14:6 (4th Ed. 2002) ................................................................................................ 9

8

Theodore Eisenberg & Geoffrey P. Miller,
  *Attorneys' Fees and Expenses in Class Action Settlements*: 1993-2008 (2009)........................ 10

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1158541.2

1

2

**NOTICE OF MOTION AND MOTION**

**TO ALL PARTIES AND COUNSEL OF RECORD**:

Please take notice that on April 4, 2014, at 9:00 a.m., in Courtroom 4, 5th floor of the United States District Court for the Northern District of California, Jose Division, located at 280 South 1st Street, San Jose, California 95113, Class Counsel will, and hereby do, move for an Order awarding the following from the common Settlement Fund: (1) attorneys' fees and costs in the amount of $8,020,976, which is 25% of the $32,083,905 common fund created for the Class (with no additional payment of Class Counsel's costs, which total $64,365.14); and (2) Service Awards to the Class Representatives of $2,000 each.

As discussed in the accompanying memorandum, the requested awards are fair, reasonable, and justified under applicable law.  This motion is based upon this notice, the attached memorandum of points and authorities, the accompanying declarations of Jonathan D. Selbin, Douglas J. Campion, Matthew R. Wilson, Beth E. Terrell, Mark Ankcorn, Joshua Swigart, Abbas Kazerounian, Alexander Burke, Syed Ali Saeed, Carol Duke, Jack Poster, Stephanie Rose, Sandra Ramirez, Shannon Johnson, Amin Makin, Fredericka Bradshaw, Cameron Azari, and the Honorable Edward A. Infante and the exhibits thereto, and other papers filed in support of preliminary and final approval of the Settlement, any oral argument that is held regarding this motion, the complete record in this litigation and such other matters as the Court may consider.[1]

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

Counsel for Plaintiffs ("Class Counsel") respectfully move the Court for an award of attorneys' fees and costs from the Settlement Fund[2] in the total amount of $8,020,976, which is 25% of the common fund created for the Class, *inclusive of* costs (Class Counsel seek reimbursement of their costs—which amount to $64,365.14—out of the total amount requested and not in addition to it).  Class Counsel also respectfully move the Court for an award of modest

---

[1] Consistent with *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988 (9th Cir. 2010), and best practices, a copy of this brief will be uploaded to the settlement website, http://www.boatcpasettlement.com.

[2] Capitalized terms in this memorandum shall have the same meaning as specified in the Settlement Agreement.

PLFS' MOT. FOR ATTORNEYS' FEES AND COSTS
AND FOR SERVICE AWARDS
5:11-CV-02390-EJD (PSG)

1158541.2

1  Service Awards to each of the seven Named Plaintiffs in the amount of $2,000 each, for a total of

2  $14,000, out of the Settlement Fund.

3      In common fund cases like this, the Ninth Circuit's benchmark for attorneys' fees is 25%

4  of the fund created for the benefit of the Class, *plus* recovery of costs.  *See, e.g., Vizcaino v.*

5  *Microsoft Corp.*, 290 F.3d 1043, 1049 (9th Cir. 2002).  Here, Class Counsel seek fees below that

6  benchmark, because they request 25% of the Fund inclusive of, and not in addition to, payment of

7  their costs.  Class Counsel respectfully submit that there is no reason to deviate from that

8  benchmark here.  Class Counsel's fee request is well-within the range commonly awarded in

9  comparable cases and is well-justified here, particularly taking into account the value of the

10 prospective practice changes undertaken by Defendants Bank of America Corporation ("BAC"),

11 Bank of America, N.A. ("BANA"), and FIA Card Services, N.A. ("FIA") (together, "Bank of

12 America").  The Ninth Circuit has held that the value of settlements should be enhanced for

13 purposes of fee analyses where there are significant "nonmonetary benefits conferred by the

14 litigation."  *See id.*  Yet Class Counsel seek no such additional valuation here, despite the

15 prospective practice changes in Bank of America's TCPA-related conduct, which put a stop to the

16 calls that form the basis for this litigation, and are a direct result of the litigation.  Class Counsel's

17 request is also supported by a lodestar plus multiplier cross-check, if the Court chooses to

18 perform such an optional cross-check.  That cross-check reveals that the fee amount requested by

19 Class Counsel would result in a multiplier of 5.7, which is within the range for such multipliers

20 established by the Ninth Circuit when costs are *not* subsumed within the attorneys' fee award, as

21 they are here.  *Id.* at 1051 & n.6.

22      Class Counsel respectfully submit that their fee request is appropriate in light of the

23 extraordinary result achieved for the Class, which includes prospective practice changes designed

24 to stop the automated calls or texts to cell phones that are the entire basis for this litigation.  The

25 Settlement also requires Bank of America to pay $32,083,905 into a non-reversionary Settlement

26 Fund, out of which eligible Class Members who file qualified claims will receive a cash payment.

27 This represents an outstanding result; it is the largest such all-cash fund of which Class Counsel

28 are aware in a TCPA class action case to date.  As the Honorable Edward A. Infante (Ret.), a

1    well-respected former judge who mediated the settlement negotiations, said "Class Counsel

2    demonstrated tenacity and creativity in arguing for monetary relief for all Class Members.  The

3    negotiation process nearly broke down several times as Class Counsel zealously advocated for a

4    larger settlement fund and Defendants likewise zealously advocated for a small settlement fund."

5    Declaration of Honorable Edward A. Infante (Ret.) in Support Motions for Attorneys' Fees and

6    Final Approval of Class Action Settlement ["Infante Decl."], ¶ 7.

7         In light of this strong result, and for the reasons discussed below, Class Counsel

8    respectfully request that the Court grant their fee request in full, and approve the Named Plaintiff

9    service awards.

10   **II.    BACKGROUND**

11        **A.    The Settlement Represents an Outstanding Result for the Class.**

12        The Settlement achieved by Class Counsel provides both core prospective practice

13   changes and significant monetary relief for the Class.

14             **1.    The Prospective Changes Benefitting the Class.**

15        The conduct driving this (and most) TCPA litigation is the allegation that the defendant

16   (here Bank of America) made harassing, repeated, and intrusive autodialed and/or prerecorded

17   calls or texts to consumers' cell phones without prior express consent to do so.  Time and again

18   Class Counsel hear from class members in this and similar cases that the single most important

19   thing to them is that such calls stop.  Thus, the primary focus of the Settlement is Bank of

20   America's prospective practice changes.  Specifically, Bank of America has developed and

21   implemented significant enhancements to its servicing systems which are designed to prevent the

22   calling of a cell phone unless a loan servicing record is systematically coded to reflect the

23   borrower's prior express consent to call his/her cell phone.  Agreement (Dkt. 59-1) ¶ 4.01.  Bank

24   of America's new procedure of coding a borrower's prior express consent, such that consent is

25   clearly reflected in that customer's account file, was developed only after Class Counsel

26   commenced the *Rose* action.  *Id.*  Class Counsel has investigated and confirmed the

27   implementation of these procedures through discovery.  *Id.*

28

### 2. The Common Settlement Fund Achieved for the Class.

In addition to the core prospective relief for the Class, the Settlement also provides that Bank of America will pay $32,083,905 into a non-reversionary Settlement Fund. Agreement ¶ 4.02. Class Counsel believe this to be the largest cash sum paid by a defendant in the 22-year history of the TCPA. From this Fund, Class Members may make (1) one claim for any Mortgage Calls and (2) one claim for any Credit Card Calls or for any Credit Card Texts.[3] *Id.* ¶ 4.03. The amount of each Class Member's cash payment will be based on a *pro rata* distribution (*id.* ¶ 4.04) and will depend on the number of valid and timely claims, but Class Counsel estimate awards in the range of $20 to $40 after deductions for the requested attorneys' fees and costs, the requested service awards to the Named Plaintiffs, and the costs of notice and claims administration. To receive a cash payment, Class Members need only complete a simple, one-page claim form and provide it to the Claims Administrator via the Internet site or by mail. *Id.* § 9.02. Class Members have 90 days from the Settlement Notice Date—*i.e.* 105 days from the Preliminary Approval Order—to submit their claim forms or to submit written requests to be excluded from or opt out of the Class. Preliminary Approval Order (Dkt. No. 67), ¶ 14. Because the Settlement Fund will be distributed *pro rata*, with the amounts from any uncashed checks either being used for a second distribution or being donated *cy pres* to the Electronic Frontier Foundation (Agreement ¶ 7.04(c)); not one penny of the Fund will revert to Bank of America. The Settlement achieved by Class Counsel therefore provides exceptional monetary relief.

### B. Class Counsel Undertook Considerable Risk in Prosecuting this Action.

This matter has required Class Counsel to spend time on this litigation that could have been spent on other matters. Moreover, because Class Counsel undertook representation of this matter on a pure contingency-fee basis, they shouldered the risk of expending substantial costs and time in litigating the action without any monetary gain in the event of an adverse judgment.[4]

---

[3] Class Members may not make both a claim for Credit Card Calls and a claim for Credit Card Texts.

[4] Declaration of Jonathan D. Selbin in Support of Plaintiffs' Motion for Attorneys' Fees and Final Approval of Class Action Settlement ["Selbin Decl."], ¶ 16-18; Declaration of Douglas J. Campion in Support of Plaintiffs' Motion for Attorneys' Fees and Final Approval of Class Action Settlement ["Campion Decl."], ¶¶ 12-13; Declaration of Beth E. Terrell in Support of Plaintiffs' Motion for Attorneys' Fees and Final Approval of Class Action Settlement ["Terrell Decl."], ¶ 23;

This action was especially risky given the various defenses potentially available to Bank of America. Class Members face the factual defense of consent, as Bank of America argues that the majority of them provided their cell phone numbers either on credit applications or through subsequent dealings with Bank of America. To recover under the TCPA, Plaintiffs would need to convince the Court to adopt their view that the FCC has clarified that "prior express consent" can only being given during "the transaction that resulted in the debt owed"; *i.e.* during the opening of Class Members' Bank of America accounts. The Court could instead have adopted Bank of America's view that consent may be given at any time and in any manner before the call was placed.

If the Court adopted Bank of America's view regarding consent, Class Members would also face a potential class certification problem. Courts are divided as to whether such consent issues predominate over common questions in TCPA cases, depending on the circumstances of the case. *Compare Meyer v. Portfolio Recovery Associates*, 707 F.3d 1036, 1042 (9th Cir. 2012) (upholding class certification) *with Gene And Gene LLC v. BioPay LLC*, 541 F.3d 318, 328 (5th Cir. 2008) (reversing class certification).

Moreover, at least some courts view awards of aggregate, statutory damages with skepticism and reduce such awards—even after a plaintiff has prevailed on the merits—on due process grounds. *See, e.g., Parker v. Time Warner Entm't Co., L.P.*, 331 F.3d 13, 22 (2d Cir. N.Y. 2003) ("[T]he potential for a devastatingly large damages award, out of all reasonable proportion to the actual harm suffered by members of the plaintiff class, may raise due process issues."); *In re Trans Union Corp. Privacy Litig.*, 211 F.R.D. 328, 350-351 (N.D. Ill. 2002) (declining to

---

Declaration of Matthew R. Wilson in Support of Plaintiffs' Motion for Attorneys' Fees and Final Approval of Class Action Settlement ["Wilson Decl."], ¶¶ 7-8; Declaration of Mark Ankcorn in Support of Plaintiffs' Motion for Attorneys' Fees and Final Approval of Class Action Settlement ["Ankcorn Decl."], ¶ 8; Declaration of Alexander H. Burke in Support of Plaintiffs' Motion for Attorneys' Fees and Final Approval of Class Action Settlement ["Burke Decl."], ¶ 11; Declaration of Abbas Kazerounian in Support of Plaintiffs' Motion for Attorneys' Fees and Final Approval of Class Action Settlement ["Kazerounian Decl."], ¶ 13; Declaration of Syed Ali Saeed in Support of Plaintiffs' Motion for Attorneys' Fees and Final Approval of Class Action Settlement ["Saeed Decl."], ¶¶ 1-3; Declaration of Joshua B. Swigart in Support of Plaintiffs' Motion for Attorneys' Fees and Final Approval of Class Action Settlement ["Swigart Decl."], ¶ 12; Declaration of Daniel G. Shay in Support of Plaintiffs' Motion for Attorneys' Fees and Final Approval of Class Action Settlement ["Shay Decl."], ¶¶ 2-4.

certify class where it "could result in statutory minimum damages of over $19 billion, which is grossly disproportionate to any actual damage").

Finally, there is the risk of losing a jury trial.  And, even if Plaintiffs did prevail, any recovery could be delayed for years by an appeal.  The Settlement provides substantial relief to Class Members without further delay.

### C.   Class Counsel Minimized Duplicative Work.

Although Class Counsel seek fees based on a percentage-of-the-fund and not a lodestar analysis, they nonetheless worked closely and in cooperation with one another to divide tasks, ensure efficient case management, and prevent duplication of efforts.  By assigning specific tasks among firms, they were able to avoid duplicating or replicating work.  For example, different firms took the responsibility for taking the five different 30(b)(6) depositions and for defending the Plaintiffs' depositions.  Also, counsel for different firms developed different claims against Bank of America, such as claims based on text messages versus calls, and claims arising from Bank of America's credit card business versus its mortgage loan business.  And, counsel for two firms split primary responsibility for drafting briefs relating to settlement approval and overseeing settlement administration.[5]

For the purposes of the lodestar cross-check, Class Counsel has also carefully reviewed their firms' internal time records and deleted entries for duplicate work.  For example, Class Counsel reduced or eliminated time reported where necessary to ensure that Class Counsel are not seeking reimbursement for unnecessary duplication of efforts.  In addition, Class Counsel deleted all time billed by attorneys and staff who contributed only minimal time to prosecuting the Actions.[6]

---

[5] Selbin Decl., ¶¶ 33, 35, 40; Terrell Decl., ¶¶ 17-19; Wilson Decl., ¶ 27; Ankcorn Decl., ¶¶ 17, 19; Burke Decl., ¶ 23; Saeed Decl., ¶ 23; Shay Decl., ¶ 14.

[6] Selbin Decl., ¶ 37; Terrell Decl., ¶ 15; Wilson Decl., ¶ 26; Kazerounian Decl., ¶ 25; Saeed Decl., ¶ 20; Swigart Decl., ¶ 24.

1158541.2

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### III.   ARGUMENT AND AUTHORITY

#### A.   The Requested Fee Award is Fair, Reasonable, and Justified.

Class Counsel seek a total award of attorneys' fees and costs of $8,020,976, or 25% of the Settlement Fund of $32,083,905 (without accounting for the value of Settlement's prospective practice changes).  Class Counsel are not seeking additional payment of their litigation expenses on top of this requested fee award, but rather are seeking those expenses as part of the total amount requested.  After subtracting class counsel's expenses of $64,365.14,[7] Class Counsel are, in actuality, seeking attorneys' fees amounting to $7,956,610.86—less than 25% of the Settlement Fund.

"Attorneys' fees provisions included in proposed class action settlement agreements are, like every other aspect of such agreements, subject to the determination whether the settlement is 'fundamentally fair, adequate, and reasonable.'"  *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir 2003) (quoting Fed. R. Civ. P. 23(e)).  The "common fund" doctrine applies where, as here, a litigation results in the recovery of a certain and calculable fund on behalf of a group of beneficiaries.  The Ninth Circuit and other federal courts have long recognized that when counsel's efforts result in the creation of a common fund that benefits plaintiffs and unnamed class members, counsel have an equitable right to be compensated from that fund for their successful efforts in creating it.  *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("lawyer who recovers a common fund…is entitled to a reasonable attorney's fee from the fund as a whole"); *Staton*, 327 F.3d at 967 (quoting *Boeing*); *In re Washington Pub. Power Supply System Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) ("those who benefit in the creation of a fund should share the wealth with the lawyers whose skill and effort helped create it").

In common fund cases, as opposed to cases analyzing fees under a fee-shifting provision, courts within the Ninth Circuit have discretion to use one of two methods to determine whether the request is reasonable: (1) percentage-of-the-fund; or (2) lodestar plus a risk multiplier.  *Staton,* 327 F.3d at 967-68; *see also In re Mercury Interactive Corp.*, 618 F.3d 988, 992 (9th Cir. 2010).

---

[7] *See* Selbin Decl., ¶ 24; Campion Decl., ¶¶ 16-19; Terrell Decl., ¶ 24; Wilson Decl., ¶ 13; Ankcorn Decl., ¶ 12; Burke Decl., ¶ 14; Kazerounian Decl., ¶ 16; Saeed Decl., ¶ 9; Swigart Decl., ¶ 15.

1158541.2

"Though courts have discretion to choose which calculation method they use, their discretion must be exercised so as to achieve a reasonable result."  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011).  Class Counsel's request for fees is reasonable under—and warrants application of—the percentage-of-the-fund analysis.  The reasonableness of Class Counsel's fee award request is confirmed by a lodestar plus multiplier cross-check, which courts in the Ninth Circuit may choose to employ in their discretion.

### 1. The Requested Fee is Presumptively Reasonable because it Resulted from Arm's Length Negotiations.

As the United States Supreme Court has explained: "A request for attorney's fees should not result in a second major litigation.  Ideally, of course, litigants will settle the amount of a fee." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).  While the Court must perform its own evaluation to verify that the requested fees are reasonable and not the product of collusion, it should give weight to the judgment of the parties and their counsel where, as here, the fees were agreed to through arm's length negotiations after the parties agreed on the other key deal terms. *See, e.g., In re Apple Computer, Inc. Derivative Litig.,* No. C 06-4128 JF (HRL), 2008 U.S. Dist. LEXIS 108195, at *12 (N.D. Cal. Nov. 5, 2008).

Here, Class Counsel negotiated with Bank of America to reach an agreed-upon fee amount that they regarded as reasonable based on, *inter alia*, the benefits achieved for the Class and applicable legal principles, and did so only *after* they reached agreement on the other key deal terms.  Infante Decl., ¶ 10.[8]  Further, the fee amount, like the Settlement itself, was agreed upon under the auspices and with the assistance of an experienced, well-respected former judge and mediator, Judge Edward A. Infante.  That fact serves as "independent confirmation that the fee was not the result of collusion or a sacrifice of the interests of the class."  *Hanlon v. Chrysler Corp*, 150 F.3d 1011, 1029 (9th Cir. 1998).  Under these circumstances, the Court should give weight to the judgment of the parties and their counsel regarding reasonable fees.

### 2. The Court Should Apply the Percentage-of-the-Fund Method.

The fairest and most efficient way to calculate a reasonable fee where, as here,

---

[8] *See also* Selbin Decl., ¶ 34; Wilson Decl., ¶ 21; Ankcorn Decl., ¶ 18; Saeed Decl., ¶ 17; Shay Decl., ¶ 13.

contingency fee litigation has produced a common fund is by awarding class counsel a percentage of the total fund.

There is an important policy reason behind choosing to apply the percentage-of-the-fund method, rather than the lodestar method, in common fund cases such as this one:

> Unlike the lodestar method which can encourage class counsel to devote unnecessary hours to generate a substantial fee, under the [percentage-of-the-fund] method, the more the attorney succeeds in recovering money for the client, and the fewer legal hours expended to reach that result, the higher dollar amount of fee the lawyer earns. Thus, one of the primary advantages of the [percentage-of-the-fund] method is that it is thought to equate the interests of class counsel with those of the class members and encourage class counsel to prosecute the case in an efficient manner.

Newberg on Class Actions § 14:6 (4th Ed. 2002). The percentage-of-the-fund method comports with the legal marketplace, where counsel's success is frequently measured in terms of the results counsel has achieved. *See Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1269 (D.C. Cir. 1993) (in common fund cases "the monetary amount of the victory is often the true measure of [counsel's] success"). By assessing the amount of the fee in terms of the amount of the benefit conferred on the class, the percentage method "more accurately reflects the economics of litigation practice" which, "given the uncertainties and hazards of litigation, must necessarily be result-oriented." *Id*. Moreover, it most effectively aligns the incentives of the class members and their counsel and thus encourages counsel to spend their time efficiently, and to focus on maximizing the relief available to the class, rather than their own lodestar hours. *Vizcaino*, 290 F.3d at 1050 n.5; *In re Activision Sec. Litig*., 723 F. Supp. 1373, 1375 (N.D. Cal. 1989). Finally, it comports with the established practice in the private legal market to reward attorneys for taking the risk of nonpayment by paying them a premium for successfully resolving contingency fee cases. *See In re Washington*, 19 F.3d at 1299; *see also* Newberg on Class Actions § 14:6 (4th Ed. 2002). "[I]f this 'bonus' methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing." *In re Washington*, 19 F.3d at 1300 (quoting *Behrens v. Wometco Enter., Inc.*, 118 F.R.D. 534, 548 (S.D. Fla. 1988), aff'd, 899 F.2d 21 (11th Cir. 1990)).

For these reasons, the percentage-of-the-fund method is applied more frequently than the lodestar plus multiplier method in common fund cases in the Ninth Circuit.  *See, e.g., In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2007) ("[U]se of the percentage method in common fund cases appears to be dominant."); *Vizcaino*, 290 F.3d at 1050 ("[T]he primary basis of the fee award remains the percentage method."); *Lopez v. Youngblood*, No. CV-F-07-0474 DLB, 2011 U.S. Dist. LEXIS 99289, at *31 (E.D. Cal. Sept. 1, 2011) ("[W]hile the Court has discretion to use either a percentage of the fund or a lodestar approach in compensating class counsel . . . the percentage of the fund is the typical method of calculating class fund fees."); *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1374-78 (N.D. Cal. 1989) (discussing advantages of percentage of recovery method in common fund cases).

Further confirming courts' preference for awarding attorneys' fees in class cases on a percentage-of-the-fund-basis, an empirical study based on eighteen years of published opinions on settlements in 689 common fund class action and shareholder derivative settlements in both state and federal courts found the following: (1) 80% of cases employed the percentage-of-the-recovery method and (2) the number of courts employing the lodestar method has declined over time, from 13.6 percent from 1993-2002 to 9.6% from 2003 to 2008.  *See* Theodore Eisenberg & Geoffrey P. Miller, *Attorneys' Fees and Expenses in Class Action Settlements*: 1993-2008, 19 (2009).[9]  By contrast, courts rely on the lodestar method under circumstances not applicable here; *i.e.*, where "there is no way to gauge the net value of the settlement or of any percentage thereof." *Hanlon*, 150 F.3d at 1029.

For these reasons, Class Counsel submit that the Court should use the standard percentage-of-the-fund approach to determining the award of attorneys' fees in this action.

### 3.      Class Counsel's Fee Request is Warranted Under the Percentage-of-the-Fund Method.

Class Counsel's request for attorneys' fees and costs in a total amount of $8,020,976—less than 25% of the $32,083,905 million common fund because it includes costs—is fair and

---

[9] *available at*
http://www.uscourts.gov/uscourts/RulesAndPolicies/rules/Duke%20Materials/Library/Theodore%20Eisenberg,%20Geoffrey%20Miller,%20Attorneys'%20Fees%20in%20Class%20Actions.pdf.

- 10 -

1    reasonable under the circumstances of this case.  In the Ninth Circuit, the "benchmark"

2    percentage fee award is 25% of the common fund, with costs and expenses awarded *on top of* this

3    fee amount.  Moreover, courts in this Circuit often award a percentage of the fund that is higher

4    than the 25% benchmark.  *Omnivision*, 559 F. Supp. 2d at 1047 ("[I]n most common fund cases,

5    the award exceeds th[e] benchmark.");  *see also Vizcaino*, 290 F.3d at 1048-1050 (awarding 28%);

6    *Garner v. State Farm*, No. CV 08 1365 CW, 2010 U.S. Dist. LEXIS 49482, at *5-6 (N.D. Cal.

7    Apr. 22, 2010) (awarding 30%); *Knight v. Red Door Salons, Inc*., No. 08-01520 SC, 2009 U.S.

8    Dist. LEXIS 11149, at *17 (N.D. Cal. Feb. 2, 2009) (same).  Based on this authority, and

9    particularly given the existence of prospective relief in the settlement, Class Counsel's request for

10   the benchmark award, with no additional request for reimbursement of their costs and expenses,

11   is conservative.

12           Courts consider a number of factors to determine the appropriate percentage to apply,

13   including: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality

14   of work; (4) the contingent nature of the fee; and (5) awards made in similar cases.  *Vizcaino*,

15   290 F.3d at 1048-1050; *Omnivision*, 559 F. Supp. 2d at 1046.  All of these factors favor approval

16   of the 25% fee award requested here.

17                           a.      **Class Counsel have Obtained an Excellent Result.**

18           The results obtained for the class are generally considered to be the most important factor

19   in determining the appropriate fee award in a common fund case.  *See Hensley v. Eckerhart*,

20   461 U.S. 424, 435 (1983); *Omnivision*, 559 F. Supp. 2d at 1046; *see also* Federal Judicial Center,

21   *Manual for Complex Litigation*, § 27.71, p.336 (4th ed. 2004) (the "fundamental focus is on the

22   result actually achieved for class members") (citing Fed. R. Civ. P. 23(h) committee note).

23   Standing alone, this factor supports Class Counsel's fee request.

24           **Prospective Relief**: Ninth Circuit courts repeatedly have held that where, as here, class

25   counsel achieves significant benefits that are not accounted for in the dollar value of the common

26   settlement fund, the court "should consider the value of [such] relief as a relevant circumstance in

27   determining what percentage of the common fund class counsel should receive as attorneys' fees."

28   *Staton*, 327 F.3d at 974; *see also Vizcaino*, 290 F.3d at 1049 (affirming enhanced fee award

1  where "the court found that counsel's performance generated benefits beyond the cash settlement

2  fund"); *Linney v. Cellular Alaska P'ship*, No. C-96-3008 DLJ, 1997 U.S. Dist. LEXIS 24300, *20

3  (N.D. Cal. July 18, 1997) (granting fee award of one-third of common fund where settlement

4  provided additional non-monetary relief).

5       Class Counsel's interviews with Plaintiffs and Class Members revealed that putting a stop

6  to the autodialed and/or prerecorded calls to their cell phones was the primary goal of this

7  litigation.[10]  Bank of America's prospective practice changes are designed to achieve this result.

8  Bank of America's new systematic coding will reflect when customers have provided consent to

9  make calls to their cell phones, thereby preventing Bank of America from calling the cell phones

10  of customers who do not wish to be called.  *See* Agreement ¶ 4.01.  If the value of this benefit

11  were to be taken into consideration, it would effectively "reduce[]the overall percentage of the

12  fees that counsel" seeks.  *See Walsh*, 2013 U.S. Dist. LEXIS 176319 at *12 (approving fee

13  request of 30% of the common fund, finding that this request was effectively reduced by the

14  "substantial injunctive relief" obtained through the settlement).  Thus, the Settlement's

15  prospective relief supports Class Counsel's fee request.

16       **Monetary Relief**:  The Settlement requires Bank of America to pay $32,083,905 into a

17  non-reversionary common Settlement Fund, out of which Class Member claimants will receive

18  their *pro rata* share of cash payments.  Agreement ¶ 4.02.  Based on Class Counsel's

19  investigation, this amounts to the largest TCPA settlement in the history of the TCPA.  No

20  amount of this fund will revert back to Bank of America.  While the precise amount of individual

21  payments cannot yet be determined, Class Counsel estimates that claimants will receive an

22  average recovery of between $20 to $40.  The Settlement achieved by Class Counsel therefore

23  provides significant monetary relief to the Class Members, particularly here, where the damages

24  are purely statutory damages, rather than "actual" damages.

25       The fact that the $32,083,905 fund does not constitute the full measure of statutory

26  damages potentially available to the Class does not merit any deviation from the 25% benchmark.

27  "The proposed settlement is not to be judged against a hypothetical or speculative measure of

28

---

[10] Selbin Decl. ¶ 43.

1   what might have been achieved by the negotiators" because "the very essence of a settlement is

2   compromise, a yielding of absolutes and an abandoning of highest hopes." *Linney*, 151 F.3d at

3   1242 (citations omitted); *see also In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir.

4   2000) (settlement of only a fraction of potential recovery fair given nature of claims and facts of

5   case). This is particularly true where, as here, the Settlement was reached at arm's length through

6   protracted negotiations by experienced counsel and after three full-day mediations before an

7   experienced mediator and former judge. It was also reached after extensive factual investigation

8   and discovery of the claims and issues and after taking into consideration the risks involved in the

9   actions. Thus, the requested 25% award (subsuming Class Counsel's costs) is reasonable.

10                  **b.       The Risks of Litigation Supports the Requested Fee.**

11          "The risk that further litigation might result in Plaintiffs not recovering at all, particularly

12  a case involving complicated legal issues, is a significant factor in the award of fees."

13  *Omnivision*, 559 F. Supp. 2d at 1046-47; *see also Vizcaino*, 290 F.3d at 1048 (risk of dismissal or

14  loss on class certification is relevant to evaluation of a requested fee).

15          Here, there was a risk that the Court would decline to adopt Class Counsel's view that the

16  FCC has clarified that "prior express consent" can only being given during "the transaction that

17  resulted in the debt owed"; *i.e.* during the opening of Class Members' Bank of America accounts.

18  The Court could instead have adopted Bank of America's view that consent may be given at any

19  time and in any manner (e.g. orally or in writing) before the call was placed.

20          Had the Court adopted Bank of America's view, there was a risk that the Court would

21  deny a motion to certify a class. Bank of America consistently argued that class certification

22  would be inappropriate in these actions due to the question of whether Class Members consented

23  to the calls at issue. And, courts are divided as to whether such consent issues predominate over

24  common questions in TCPA cases, depending on the circumstances of the case. *Compare Meyer*

25  *v. Portfolio Recovery Associates*, 707 F.3d 1036, 1042 (9th Cir. 2012) (upholding class

26  certification) *with Gene And Gene LLC v. BioPay LLC,* 541 F.3d 318, 328 (5th Cir. 2008)

27  (reversing class certification).

28

1    Finally, there was the ever-present risk of losing a jury trial.  And, even if Plaintiffs did

2    prevail, any recovery could be delayed for years by an appeal.  Given all of the above risks, all of

3    which were present when Class Counsel undertook the case on a contingency fee basis, Class

4    Counsel's fee award request is reasonable.

5              **c.**    **The Skill Required and Quality of Work Performed Supports the Requested Fee.**

6

7    The "prosecution and management of a complex national class action requires unique

8    legal skills and abilities" that are to be considered when evaluating fees.  *Omnivision*, 559 F. Supp.

9    2d at 1047 (citation omitted).  Class Counsel are experienced class action litigators who have

10   successfully prosecuted complex consumer cases, and who have become particularly skilled and

11   experienced in litigating TCPA class actions.[11]  Class Counsel performed significant factual

12   investigation prior to bringing these actions, engaged in motions practice including opposing a

13   motion to dismiss and successfully moving to compel discovery, engaged in written discovery

14   and depositions, participating in protracted and hard-fought negotiations with Bank of America

15   including participating in three full-day mediations, and efficiently and vigorously negotiated a

16   $32,083,905 Settlement with prospective practice changes that are important to Plaintiffs and

17   Class Members.[12]  According to Judge Edward Infante, "Class Counsel demonstrated tenacity and

18   creativity in arguing for monetary relief for all Class Members.  The negotiation process nearly

19   broke down several times as Class Counsel zealously advocated for a larger settlement fund and

20   Defendants likewise zealously advocated for a small settlement fund."   Infante Decl., ¶ 7.  Class

21   Counsel's skill and expertise, reflected in the prompt and significant Settlement, support the fee

22   request.

23

24

25

26   [11] Selbin Decl., ¶¶ 2-14; Campion Decl., ¶¶ 4-11; Terrell Decl., ¶¶ 2-11; Wilson Decl., ¶¶ 1-6; Ankcorn Decl., ¶¶ 2-7; Burke Decl., ¶¶ 2-11; Kazerounian Decl., ¶¶ 4-12; Saeed Decl., ¶¶ 1-8;

27   Swigart Decl., ¶¶ 4-10; Shay Decl., ¶ 1.

28   [12] Selbin Decl., ¶¶ 31-36; Campion Decl., ¶¶ 22-25; Terrell Decl., ¶¶ 18-19, 22; Wilson Decl., ¶¶ 18-23; Ankcorn Decl., ¶¶ 16-18; Burke Decl., ¶¶ 18-22; Kazerounian Decl., ¶¶ 21-24; Saeed Decl., ¶¶ 13-19; Swigart Decl., ¶¶ 20-23; Shay Decl., ¶¶ 12-13.

1

         **d.**      **Class Counsel's Undertaking of the Actions on a Contingency-Fee Basis Supports the Requested Fee.**

2

3       The Ninth Circuit has long recognized that the public interest is served by rewarding

4   attorneys who assume representation on a contingent basis to compensate them for the risk that

5   they might be paid nothing at all for their work. *In re Washington Pub. Power Supply Sys. Sec.*

6   *Litig.*, 19 F.3d at 1299 ("Contingent fees that may far exceed the market value of the services if

7   rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of

8   assuring competent representation for plaintiffs who could not afford to pay on an hourly basis

9   regardless whether they win or lose."); *Vizcaino*, 290 F.3d at 1051 (courts reward successful class

10  counsel in contingency cases "for taking the risk of nonpayment by paying them a premium over

11  their normal hourly rates").

12      Class Counsel prosecuted this matter on a purely contingent basis, agreeing to advance all

13  necessary expenses and knowing that they would only receive a fee if there was a recovery.  Class

14  Counsel have spent considerable outlays of time and money by, among other things, (1)

15  investigating these actions; (2) conducting legal research and briefing an opposition to Bank of

16  America's motion to dismiss; (3) conducting discovery, including several 30(b)(6) depositions of

17  Bank of America employees; (4) negotiating the Settlement over many months, including by

18  participating in three full-day mediations; (5) reviewing confirmatory discovery and data; (6)

19  administering the Settlement; and (7) responding to Class Member inquiries.[13]  Class Counsel

20  expended these resources despite the real risk that they would never be compensated at all.  Class

21  Counsel's "substantial outlay, when there is a risk that that none of it will be recovered, further

22  supports the award of the requested fees" here.  *Omnivision*, 559 F. Supp. 2d at 1047.

23      Further, Class Counsel devoted the appropriate amount of time, resources, and energy

24  necessary to handle this matter.  Such devotion to this matter in lieu of other opportunities further

25  supports the requested fee award.

26

27

28

---

[13] Selbin Decl., ¶¶ 31-36; Campion Decl., ¶¶ 22-25; Terrell Decl., ¶¶ 18-19, 22; Wilson Decl., ¶¶ 18-23; Ankcorn Decl., ¶¶ 16-18; Burke Decl., ¶¶ 18-22; Kazerounian Decl., ¶¶ 21-24; Saeed Decl., ¶¶ 13-19; Swigart Decl., ¶¶ 20-23; Shay Decl., ¶¶ 12-13.

1

**e.**     **The Requested Fee Comports with Fees Awarded in Similar Actions.**

2

3       The fee requested is well within the range commonly awarded in TCPA class actions.  *See,*

4    *e.g., Bellows v. NCO Financial Systems, Inc.*, No. 07-CV-1413 W (AJB), 2009 U.S. Dist. LEXIS

5    273, at *4-5 (S.D. Cal. Jan 5, 2009) (awarding 31.6% of TCPA settlement fund); *Adams v.*

6    *AllianceOne Receivables Mgmt., Inc.*, No. 3:08-cv-00248-JAH-WVG (S.D. Cal. Sept. 28, 2012)

7    (awarding 30% of the TCPA settlement fund) (Ex. B to Selbin Decl.); *Grannan v. Alliant Law*

8    *Group, P.C.*, No. C10-02803 HRL, 2012 U.S. Dist. LEXIS 8101, at *28-30 (N.D. Cal. Jan. 24,

9    2012) (awarding 25% of TCPA settlement fund); *Satterfield v. Simon & Schuster, Inc. et al.*, No.

10   06-cv-2893 (N.D. Cal. Aug. 6, 2010) (Ex. C to Selbin Decl.) (same).  Courts have done so in

11   TCPA actions that involved significantly less litigation than that involved in these actions.  *Lo v.*

12   *Oxnard European Motors, LLC,* No. 11CV1009 JLS, 2012 U.S. Dist. LEXIS 73983, at *9-10

13   (S.D. Cal. May 29, 2012) (awarding 25% fee request where TCPA class action settled two

14   months after commencement of the lawsuit).

15       In fact, Class Counsel's requested fee award is less than the typical fee often awarded in

16   class actions.  *See, e.g., Omnivision*, 559 F. Supp. 2d at 1047 ("in most common fund cases, the

17   award exceeds that [25%] benchmark."); *In re Mego*, 213 F.3d at 457, 463 (9th Cir. 2000)

18   (affirming fee award of one third of common fund); *Knight*, 2009 U.S. Dist. LEXIS 11149 at *18-

19   *19 (awarding 30% fee); *In re Heritage Bond Litig. v. U.S. Trust Co. of Tex., N.A.,* No. 02-ML-

20   1475-DT(RCx), 2005 U.S. Dist. LEXIS 13627, at *29 (C.D. Cal. June 10, 2005) (awarding one-

21   third of fund); *In re Public Service Co.,* No. 91-0536M, 1992 U.S. Dist. LEXIS 16326, at *32-33

22   (S.D. Cal. July 28, 1992) (awarding 33% fee); *Antonopulos v. N. Am. Thoroughbreds, Inc.*, No.

23   87-0979G (CM), 1991 U.S. Dist. LEXIS 12579, at *9 (S.D. Cal. May 6, 1991) (awarding one-

24   third of fund); *In re M.D.C. Holdings Sec. Litig.,* No. CV 89-0090 E (M), 1990 U.S. Dist. LEXIS

25   15488, at *21, 32 (S.D. Cal. Aug. 30, 1990) (awarding 30% fee where settlement obtained "in a

26   very short amount of time" and finding that class counsel should be rewarded, not penalized, for

27   achieving early success on behalf of the class).

28

1   In short, Class Counsel's fee request is reasonable and fair under the "percentage of the

2   fund" method.

3       **4.      A Lodestar Plus Multiplier Cross-Check Supports the Requested Fee.**

4   A court applying the percentage-of-the-fund method may use the lodestar method as a

5   "cross-check on the reasonableness of a percentage figure." *Vizcaino*, 290 F.3d at 1050 & n.5.

6   The cross-check is optional, and Class Counsel submit that its use is unnecessary here. *See Glass*

7   *v. UBS Fin. Servs.,* No. C-06-4068 MMC, 2007 U.S. Dist. LEXIS 8476, at *48 (N.D. Cal. Jan. 26,

8   2007) (finding that "where the early settlement resulted in a significant benefit to the class," there

9   is no need "to conduct a lodestar cross-check"). If the Court chooses to perform such a cross-

10  check here, however, it confirms that a 25% fee award is reasonable.

11  The first step in the lodestar-multiplier approach is to multiply the number of hours

12  counsel reasonably expended by a reasonable hourly rate. *Hanlon,* 150 F.3d at 1029. Once this

13  raw lodestar figure is determined, the court may then adjust that figure based upon its

14  consideration of many of the same "enhancement" factors considered in the percentage-of-the-

15  fund analysis, such as: (1) the results obtained; (2) whether the fee is fixed or contingent; (3) the

16  complexity of the issues involved; (4) the preclusion of other employment due to acceptance of

17  the case; and (5) the experience, reputation, and ability of the attorneys. *See Kerr v. Screen*

18  *Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).

19       **a.      Class Counsel's Lodestar is Reasonable.**

20  The accompanying declarations of Class Counsel set forth the hours of work and billing

21  rates used to calculate their lodestar. As described in those declarations, Class Counsel and their

22  staffs have devoted a total of approximately 2560.70 hours to this litigation, and have a total

23  lodestar to date of approximately $1,396,523.75. These amounts do not include the additional

24  time that Class Counsel will spend going forward in seeking approval of, and implementing, the

25  Settlement, including assisting Class Members with claims and overseeing claims administration

26  generally, tasks that can require substantial additional hours not reflected in a multiplier

27  calculated on current lodestar. Class Counsel's lodestar will grow as they continue to finalize the

28  settlement process and close the litigation. The claims period will last for several months, and

1    Class Counsel's commitment of time and labor to this case will continue until (and likely beyond)

2    that date.  Class Counsel will continue to assist Class Members with individual inquiries, will

3    oversee the claims resolution process, and will help resolve Class member challenges to the result

4    of their claims submissions.  Judging by previous experiences, these responsibilities will require

5    substantial numbers of hours of work by Class Counsel over the coming months.[14]

6         Class Counsel's time was spent primarily on the following tasks: (1) investigating the

7    claims of the Plaintiffs and Class Members; (2) conducting legal research regarding and opposing

8    Bank of America's motion to dismiss; (3) conducting discovery and deposing several 30(b)(6)

9    witnesses; (4) engaging in particularly difficult settlement negotiations that spanned many

10   months, including by participating in three full-day mediations; (5) reviewing confirmatory

11   discovery and data; (6) drafting the preliminary approval motion and overseeing settlement

12   administration; and (7) responding to Class Member inquiries.[15]

13        Class Counsel's lodestar is reasonable.  Class Counsel prosecuted the claims at issue

14   efficiently and effectively, making every effort to prevent the duplication of work that might have

15   resulted from having multiple firms working on this case.  Tasks were reasonably divided among

16   law firms to ensure avoid replicating work.[16]  Further, tasks were delegated appropriately among

17   partners, associate attorneys, paralegals, and other staff according to their complexity such that

18   the attorneys with higher billing rates billed time only where necessary.  In addition, Class

19   Counsel's contemporaneous time records were carefully reviewed and duplicative work, as well

20   as *de minimis* time billed by attorneys and staff who had little participation in the actions, was

21   deleted.[17]

22        Class Counsel's hourly rates are also reasonable.  In assessing the reasonableness of an

23

---

24   [14] Selbin Decl., ¶ 22; Campion Decl., ¶ 14; Terrell Decl., ¶ 21; Wilson Decl., ¶ 11; Ankcorn Decl., ¶ 10; Burke Decl., ¶ 13; Kazerounian Decl., ¶ 14; Saeed Decl., ¶ 7; Swigart Decl., ¶ 13; Shay Decl., ¶ 8.

25   [15] Selbin Decl., ¶¶ 31-36; Campion Decl., ¶¶ 22-25; Terrell Decl., ¶¶ 18-19, 22; Wilson Decl.,
26   ¶¶ 18-23; Ankcorn Decl., ¶¶ 16-18; Burke Decl., ¶¶ 18-22; Kazerounian Decl., ¶¶ 21-24; Saeed Decl., ¶¶ 13-19; Swigart Decl., ¶¶ 20-23; Shay Decl., ¶¶ 12-13.

27   [16] Selbin Decl., ¶¶ 40; Terrell Decl., ¶¶ 17; Wilson Decl., ¶ 27; Ankcorn Decl., ¶ 19; Burke Decl., ¶ 23; Saeed Decl., ¶ 23; Shay Decl., ¶ 14.

28   [17] Selbin Decl., ¶ 37; Terrell Decl., ¶ 15; Wilson Decl., ¶ 26; Kazerounian Decl., ¶ 25; Saeed Decl., ¶ 20; Swigart Decl., ¶ 24.

1158541.2

1   attorney's hourly rate, courts consider whether the claimed rate is "in line with those prevailing in

2   the community for similar services by lawyers of reasonably comparable skill, experience and

3   reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1994).  Class Counsel here are

4   experienced, highly regarded members of the bar with extensive expertise in the area of class

5   actions and complex litigation involving consumer claims like those at issue here.[18]  Class

6   Counsel's customary rates used in calculating the lodestar here have been approved by courts in

7   this District and other courts.[19]

8                    **b.      A Multiplier is Warranted.**

9        The benchmark 25% fee requested by Class Counsel reflects a multiplier of 5.7 of Class

10   Counsel's combined lodestar.  Courts have approved fee awards resulting in multipliers which are

11   near or higher than that requested here.  *See, e.g., Vizcaino*, 290 F.3d at 1051 and Appendix

12   (affirming 28% fee award where multiplier equaled 3.65; and citing cases approving multipliers

13   in common fund cases going as high as 19.6); *Steiner v. Am. Broad. Co*., 248 Fed. Appx. 780,

14   783 (9th Cir. Cal. 2007) (upholding 25% fee award yielding multiplier of 6.85, finding that it

15   "falls well within the range of multipliers that courts have allowed"); *Craft v. County of San*

16   *Bernardino*, 624 F. Supp. 2d 1113, 1125 (C.D. Cal. 2008) (approving 25% fee award yielding a

17

18   _____

   [18] Selbin Decl., ¶¶ 2-14; Campion Decl., ¶¶ 4-11; Terrell Decl., ¶¶ 2-11; Wilson Decl., ¶¶ 1-6;
19   Ankcorn Decl., ¶¶ 2-7; Burke Decl., ¶ 2-11; Kazerounian Decl., ¶¶ 4-12; Saeed Decl., ¶¶ 1-8;
   Swigart Decl., ¶¶ 4-10; Shay Decl., ¶ 1.

20   [19] Selbin Decl., ¶¶ 25-29; Campion Decl., ¶ 20; Terrell Decl., ¶ 23; Burke Decl., ¶ 16;
   Kazerounian Decl., ¶ 18; Swigart Decl., ¶ 17.  *See also Nwabueze v. AT&T Inc.,* No. C 09-01529
21   SI, 2014 U.S. Dist. LEXIS 11766, at *8 (N.D. Cal. Jan. 29, 2014) ("[T]he Court also finds that
   the rates requested are within the range of reasonable hourly rates for contingency litigation
22   approved in this District."); *Walsh v. Kindred Healthcare*, No. C 11-00050 JSW, 2013 U.S. Dist.
   LEXIS 176319, at *9 (N.D. Cal. Dec. 16, 2013) ("The Court concludes Plaintiffs have shown that
23   the requested rates are reasonable."); *Ross v. Trex Co*., No. 09-cv-00670-JSW, 2013 U.S. Dist.
   LEXIS 177732, at *4 (N.D. Cal. Dec. 16, 2013) (finding the "reasonable hourly rates of
24   counsel . . . compare favorably to other rates awarded in this judicial district"); *Moore v. Verizon*
   *Communs., Inc.*, No. 09-1823 SBA (JSC), 2013 U.S. Dist. LEXIS 170027, at *28 (N.D. Cal. Nov.
25   27, 2013) ("The Court concludes that the hourly rates for the attorneys who billed time on this
   case are reasonable given the geographic location and experience of counsel."); *In re AXA*
26   *Rosenberg Investor Litig.*, No. 11-cv-00536-JSW, Dkt. No. 73 (N.D. Cal. April 2, 2012) (White,
   J.) ("The Court has also reviewed Lead Counsel's hourly rates and concludes that these rates are
27   appropriate for attorneys in this locality of Lead Counsel's skills and experience."); *Fulford v.*
   *Logitech, Inc*., No. 08-cv-02041 MMC, 2010 U.S. Dist. LEXIS 144437, at*10 (N.D. Cal. Mar. 5,
28   2010) ("The Court further finds that Plaintiff's Counsels' hourly rates are reasonable for their skill
   and the work they performed.").

1    multiplier of 5.2 and stating that "there is ample authority for such awards resulting in multipliers

2    in this range or higher").

3         The fact that Class Counsel are requesting below the benchmark should be taken into

4    account in assessing whether the multiplier is reasonable. *See Stop & Shop Supermarket Co. v.*

5    *SmithKline Beecham Corp.*, No. 03-4578, 2005 U.S. Dist. LEXIS 9705, at*60 (E.D. Pa. May 20,

6    2005) (approving multiplier of 15.6, noting that the "high lodestar multiplier . . . is neutralized

7    with respect to the reasonableness of a percentage fee award of 20%" of $100 million fund).

8    Indeed, in many cases approving multipliers, the percentage-of-the-fund requested is higher than

9    the benchmark. *See AllianceOne*, No. 3:08-cv-00248-JAH-WVG (S.D. Cal. Sept. 28, 2012) (Ex.

10   B to Selbin Decl.) (awarding 30% of the TCPA settlement fund, which amounted to a 3.81

11   multiplier of class counsel's lodestar, and awarding costs on top of the fee award); *see also Maley*

12   *v. Del Global Techs. Corp.,* 186 F. Supp. 2d 358, 371 (S.D.N.Y. 2002) (awarding one-third of

13   fund, resulting in "modest multiplier of 4.65"); *Di Giacomo v. Plains All Am. Pipeline*, No. H-99-

14   4137, 2001 U.S. Dist. LEXIS 25532, at *31 (S.D. Tex. Dec. 18, 2001) (awarding 30% of fund,

15   resulting in multiplier of 5.3).  Such multipliers, particularly where the percentage of the fee

16   requested is reasonable, reflect the principle that attorneys should not be discouraged from

17   obtaining early victories that benefit the class.  *See, e.g., Craft,* F. Supp. 2d at 1123-1127

18   (awarding 25% of fund, which amounted to 5.2 multiplier, in part because of the numerous

19   drawbacks and disincentives associated with a pure lodestar approach); *see also Lopez*, 2011 U.S.

20   Dist. LEXIS 99289, at *10, 39-43 (citing *Swedish Hosp.*, 1 F.3d at 1266-67) (awarding 28.5% of

21   fund, and finding that a lodestar cross-check is "not a useful reference point").

22        Furthermore, under the circumstances of this case—including, *inter alia*, the exceptional

23   monetary and prospective relief obtained for the Class; the risks involved with continued

24   litigation; the contingent nature of the fee; the arm's length nature of difficult and protected

25   negotiations; and the experience of Class Counsel in litigating TCPA class actions—a significant

26   multiplier is well justified here under applicable law when performing a cross-check.  *See Kerr*,

27   526 F.2d at 70; *see also Washington Pub. Power*, 19 F.3d at 1299-1300 ("[C]ourts have routinely

28   enhanced the lodestar to reflect the risk of non-payment in common fund cases" in accord with

the "established practice in the private legal market of rewarding attorneys for taking the risk of

nonpayment by paying them a premium over their normal hourly rates for winning contingency

cases."). A lodestar plus multiplier cross-check therefore further supports the reasonableness of

the requested 25% fee.

> ### B. Class Counsel Are Not Seeking Reimbursement of their Costs on Top of the Fee Award, Although Such Reimbursement Would be Justified.

Class Counsel are not seeking payment of costs in addition to their recovery of 25% of the

Fund, and will instead be reimbursed costs out of that 25%. As such, there is no need for detailed

analysis. Nonetheless, recovery of those costs would be appropriate in its own right.

"Reasonable costs and expenses incurred by an attorney who creates or preserves a common fund

are reimbursed proportionately by those class members who benefit from the settlement." *In re

Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1995) (citing *Mills v. Electric

Auto-Lite Co.*, 396 U.S. 375, 391-392 (1970)). To date, Class Counsel have incurred out-of-

pocket costs totaling $64,365. This amount includes costs for (1) mediation fees; (2) travel to the

mediations, meetings with counsel, and court hearings; (3) hard costs such as legal research

through LEXIS and Westlaw and Federal Express, postage, and messengering fees; and (4) other

costs such as printing, copying, and telephone charges.[20] These relatively modest out-of-pocket

costs were necessary to secure the resolution of this litigation. *See In re Media Vision*, 913 F.

Supp. at 1367-72 (costs related to retention of experts, photocopy costs, travel expenses, postage,

telephone costs, computerized legal research fees, and filing fees may be reimbursed).

> ### C. The Named Plaintiffs' Service Awards Are Reasonable.

As the Ninth Circuit has recognized, "named plaintiffs, as opposed to designated class

members who are not named plaintiffs, are eligible for reasonable incentive payments." *Staton*,

327 F.3d at 977; *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) (service

awards "are fairly typical in class action cases"). Such awards are "intended to compensate class

representatives for work done on behalf of the class [and] make up for financial or reputational

---

[20] *See* Selbin Decl., ¶ 24; Campion Decl., ¶¶ 16-19; Terrell Decl., ¶ 24; Wilson Decl., ¶ 13; Ankcorn Decl., ¶ 12; Burke Decl., ¶ 14; Kazerounian Decl., ¶ 16; Saeed Decl., ¶ 9; Swigart Decl., ¶ 15.

1  risk undertaken in bringing the action." *Id*. Small incentive awards, such as those requested here,

2  promote the public policy of encouraging individuals to undertake the responsibility of

3  representative lawsuits. The requested modest service awards of $2,000 for each of the seven

4  Named Plaintiffs are well justified.

5  In addition to lending their names to this matter, and thus subjecting themselves to public

6  attention, the Named Plaintiffs were actively engaged in these Actions. Among other things, they

7  (1) provided information to Class Counsel for the complaints and other pleadings; (2) reviewed

8  pleadings and other documents including the complaints; (3) communicated on a regular basis

9  with counsel and kept themselves informed of progress in the litigation and settlement

10  negotiations; (4) reviewed and approved the proposed settlements; and (5) prepared for and

11  provided testimony in depositions.[21] Their dedication to these actions was notable, particularly

12  given the relatively modest size of their personal financial stakes in this case. *See Van Vranken v.*

13  *Atlantic Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995) (awarding $100,000 incentive

14  award in part on the ground that, "[i]n exchange for his participation, Van Vranken will not

15  receive great personal benefit").

16  Moreover, the amount requested here, $2,000 for each of the seven Named Plaintiffs

17  (totaling $14,000, or 0.0004% of the Settlement Fund), is reasonable and less than amounts

18  frequently awarded in TCPA actions. *See, e.g., Satterfield*, No. 06-cv-2893 (N.D. Cal. Aug. 6,

19  2010) (Ex. C to Selbin Decl.) (awarding $20,000 to one named plaintiff, and $5,000 each to the

20  other two named plaintiffs, in a TCPA action); *AllianceOne,* No. 3:08-cv-00248-JAH-WVG (S.D.

21  Cal. Sept. 28, 2012) (Ex. B to Selbin Decl.) (awarding $5,000 to one named plaintiff, and $2,500

22  each to the other two named plaintiffs, in a TCPA action). It is also less than the service awards

23  ───────────────

24  [21] Declaration of Stephanie Rose in Support of Plaintiffs' Motion for Attorneys' Fees and Costs
and for Approval of Incentive Payments, ¶¶ 4-6; Declaration of Sandra Ramirez in Support of

25  Plaintiffs' Motion for Attorneys' Fees and Costs and for Approval of Incentive Payments, ¶¶ 5-7;
Declaration of Carol Duke in Support of Plaintiffs' Motion for Attorneys' Fees and Costs and for
Approval of Incentive Payments, ¶ 4; Declaration of Freddericka Bradshaw in Support of

26  Plaintiffs' Motion for Attorneys' Fees and Costs and for Approval of Incentive Payments, ¶ 4;
Declaration of Jack Poster in Support of Plaintiffs' Motion for Attorneys' Fees and Costs and for

27  Approval of Incentive Payments, ¶ 4; Declaration of Shannon Johnson in Support of Plaintiffs'
Motion for Attorneys' Fees and Costs and for Approval of Incentive Payments, ¶ 4; Declaration

28  of Amin Makin in Support of Plaintiffs' Motion for Attorneys' Fees and Costs and for Approval
of Incentive Payments, ¶ 4.

1158541.2

frequently awarded in other class actions, including those that have settled at similar procedural postures. *Hopson v. Hanesbrands Inc.,* No. CV-08-0844 EDL, 2009 U.S. Dist. LEXIS 33900, at *27-28 (N.D. Cal. Apr. 3, 2009) (awarding $5,000 incentive payment, constituting 1.25% of the settlement fund, and finding that, "in general, courts have found that $5,000 incentive payments are reasonable") (citations omitted); *Odrick v. UnionBanCal Corp.,* No. C 10-5565 SBA, 2012 U.S. Dist. LEXIS 171413, at *11, 18 (N.D. Cal. Dec. 3, 2012) (awarding $5,000 to named plaintiff where "the settlement was reached at the early stages of litigation"); *Fitzgerald v. City of Los Angeles,* No. CV 03-01876 NM, 2003 U.S. Dist. LEXIS 27382, at *9 (C.D. Cal. Dec. 8, 2003) (awarding $3,500 each to class representatives in early settlement case).

Accordingly, Class Counsel respectfully request the Court to award service awards of $2,000 each to the Named Plaintiffs.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, Class Counsel respectfully request that the Court grant Plaintiffs' motion for an award from the Settlement Fund of attorneys' fees and costs in the total amount of $8,020,976 and service awards in the amount of $2,000 each to the seven Class Representatives, for a total of $14,000.

1    Dated: February 19, 2014              Respectfully submitted,

2                                          LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

3

4                                          By: */s/ Jonathan D. Selbin*
                                               Jonathan D. Selbin

5

6                                          Jonathan D. Selbin
                                           LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
                                           250 Hudson Street, 8th Floor

7                                          New York, NY  10013
                                           Telephone:  (212) 355-9500

8                                          Facsimile:  (212) 355-9592

9                                          Daniel M. Hutchinson
                                           Nicole D. Sugnet

10                                         LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
                                           275 Battery Street, 29th Floor

11                                         San Francisco, CA  94111-3339
                                           Telephone:  415.956.1000

12                                         Facsimile:  415.956.1008

13                                         Matthew R. Wilson
                                           MEYER WILSON CO., LPA

14                                         1320 Dublin Road, Suite 100
                                           Columbus, OH  43215

15                                         Telephone:  (614) 224-6000
                                           Facsimile:  (614) 224-6066

16

17                                         Beth E. Terrell
                                           Kimberlee L. Gunning

18                                         TERRELL MARSHALL DAUDT & WILLIE PLLC
                                           936 North 34th Street, Suite 40

19                                         Seattle, WA 98103
                                           Telephone:  (206) 816-6603

20                                         Facsimile:  (206) 350-3528

21                                         Mark Ankorn

22                                         CASEY GERRY SCHENK FRANCAVILLA BLATT, &
                                           PENFIELD LLP

23                                         110 Laurel Street
                                           San Diego, CA 92101

24                                         Telephone:  (619) 238-1811
                                           Facsimile:  (619) 544-9232

25

26                                         Abbas Kazerounian
                                           KAZEROUNIAN LAW GROUP, APC

27                                         2700 North Main Street, Suite 1000
                                           Santa Ana, CA 92705

28                                         Telephone:  (800) 400-6808
                                           Facsimile:  (800) 520-5523

PLFS' MOT. FOR ATTORNEYS' FEES AND COSTS
                                                         AND FOR SERVICE AWARDS
1158541.2                                                5:11-CV-02390-EJD (PSG)

                                           Alexander H. Burke

1

2

Douglas J. Campion
LAW OFFICES OF DOUGLAS J. CAMPION
409 Camino Del Rio South, Suite 303
San Diego, CA 92108
Telephone:  (619) 299-2091
Facsimile:  (619) 858-0034

Joshua B. Swigart
HYDE & SWIGART
2221 Camino Del Rio South, Suite 101
San Diego, CA 92108
Telephone:  (619) 233-7770
Facsimile:  (619) 297-1022

*Attorneys for Plaintiffs and the Proposed Class*