1   Douglas J. Campion, SBN #75381
    Email: doug@djcampion.com
2   LAW OFFICE OF DOUGLAS J. CAMPION
    409 Camino Del Rio South, Suite 303
3   San Diego, California  92108
    Telephone: (619) 299-2091
4   Facsimile: (619) 858-0034
5
    LIEFF CABRASER HEIMANN
6   & BERNSTEIN, LLP
    Jonathan D. Selbin (State Bar No. 170222)
7   250 Hudson Street, 8th Floor
    New York, NY  10013
8   Telephone:  (212) 355-9500
    Facsimile:  (212) 355-9592
9
10  [Additional Counsel Appear on Signature Page]

11  *Attorneys for Plaintiffs and the Proposed Class*

12              UNITED STATES DISTRICT COURT

13           NORTHERN DISTRICT OF CALIFORNIA

14

15  STEPHENIE ROSE, on behalf herself and        Case No. 5:11-cv-02390-EJD (PSG)
    all others similarly situated,
16                                               **PLAINTIFFS' NOTICE OF MOTION AND**
                       Plaintiff,                **MEMORANDUM OF POINTS AND**
17                                               **AUTHORITIES IN SUPPORT OF**
           v.                                    **UNOPPOSED MOTION FOR FINAL**
18                                               **APPROVAL OF CLASS ACTION**
    BANK OF AMERICA CORPORATION,                 **SETTLEMENT**
19  and FIA CARD SERVICES, N.A.,
                                                 Date: April 4, 2014
20                     Defendants.               Time: 9:00 a.m.
                                                 Courtroom:  4, 5th Floor
21                                               Judge: Edward J. Davila

22  CAROL DUKE AND JACK POSTER,
    on behalf of themselves and all others
23  similarly situated,

24                     Plaintiffs,

25         v.

26  BANK OF AMERICA, N.A.; BANK OF
    AMERICA CORPORATION;
27  AND FIA CARD SERVICES, N.A.,

28                     Defendants.

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ........................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................. 1

I.     INTRODUCTION ............................................................................. 1

II.    STATEMENT OF THE FACTS .......................................................... 3

    A.    The TCPA Claims ................................................................... 4

    B.    Plaintiffs Thoroughly Investigated the TCPA Claims ................ 4

    C.    The Parties Mediated After Engaging in Full Classwide Discovery ......... 5

    D.    The Proposed Settlement ......................................................... 6

        1.    The Settlement Class .................................................. 6

        2.    Prospective Relief for All Class Members ....................... 7

        3.    Monetary Relief for Settlement Class Members .............. 7

        4.    *Cy Pres* Distributions ............................................... 8

        5.    Class Release ........................................................... 8

        6.    Attorneys' Fees and Costs and Class Representative Service Awards .............. 8

III.    CLASS NOTICE HAS BEEN DISSEMINATED .................................. 9

    A.    Direct Mail and Email Notice .................................................. 9

    B.    Published Notice .................................................................. 10

    C.    CAFA Notice ...................................................................... 10

    D.    Settlement Website and Toll-Free Number ............................... 11

    E.    Settlement Administration Costs ............................................ 12

IV.    CLASS MEMBERS HAVE RESPONDED POSITIVELY TO THE SETTLEMENT .............. 12

V.    FINAL APPROVAL IS WARRANTED .............................................. 12

    A.    The Class Action Settlement Approval Process ........................ 12

    B.    The Settlement is Fair, Reasonable, and Adequate, and Should be Approved .............. 13

        1.    The Strength of the Plaintiffs' Case and the Risk, Expense, Complexity, and Likely Duration of Further Litigation ............... 14

        2.    The Amount Offered in Settlement ............................. 16

        3.    The Extent of Discovery Completed and the Stage of Proceedings .............. 17

        4.    The Experience and Views of Counsel ........................ 18

        5.    The Presence of a Governmental Participant ................ 18

        6.    The Reaction of Class Members ................................. 19

        7.    The Settlement in the Product of Arm's Length Negotiations ...... 19

1

**TABLE OF CONTENTS**
**(continued)**

2

**Page**

3

VI.    CONCLUSION ........................................................................................................ 19

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FIRST AMENDED CLASS ACTION COMPLAINT FOR
DAMAGES AND INJUNCTIVE RELIEF PURS 12-CV-
1476 MMA (JMA)

1

# TABLE OF AUTHORITIES

2

**Page**

3

## <u>CASES</u>

4

*Arthur v. Sallie Mae, Inc.*,
No. 10-cv-132413, 2012 U.S. Dist. LEXIS 132413
(W.D. Wash. Sept. 17, 2012) .................................................................. 15, 16

5

6

*Boyd v. Bechtel Corp.*,
485 F. Supp. 610 (N.D. Cal. 1979) ................................................................ 18

7

*Churchill Village, LLC v. Gen. Elec.*,
361 F.3d 566 (9th Cir. 2004) ............................................................... 13, 14

8

*Class Plaintiffs v. City of Seattle*,
955 F.2d 1268 (9th Cir. 1992) ...................................................................... 12

9

*Class Plaintiffs v. City of Seattle*,
955 F.2d 1268 (9th Cir. 1992) ...................................................................... 13

10

*Gene And Gene LLC v. BioPay LLC*,
541 F.3d 318 (5th Cir. 2008) ........................................................................ 15

11

12

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) ........................................................................ 19

13

*In re Omnivision Technologies, Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2007) ........................................................ 18

14

*Linney v. Cellular Alaska P'ship*,
No. C-96-3008 DLJ, 1997 U.S. Dist. LEXIS 24300
(N.D. Cal. July 18, 1997) .............................................................................. 18

15

16

*Meyer v. Portfolio Recovery Associates*,
696 F.3d 943 (9th Cir. 2012) ........................................................................ 15

17

*Officers for Justice v. Civil Serv. Comm'n*,
688 F.2d 615 (9th Cir. 1982) ................................................................. 13, 14

18

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003) ........................................................................ 14

19

20

## <u>STATUTES</u>

21

28 U.S.C. § 1715 ............................................................................... 10, 19

47 U.S.C. § 227(b)(1)(A) ......................................................................... 2, 4

22

## <u>RULES</u>

23

Fed. R. Civ. P. 23(e)(2) .................................................................................. 13

24

## <u>TREATISES</u>

*4 Newberg on Class Actions* (4th Ed. 2002)
§ 11.25 ........................................................................................................... 13

25

*4 Newberg on Class Actions* (4th Ed. 2002)
§ 11.41 ........................................................................................................... 13

26

*Manual for Complex Litigation* (Fourth) (2004)
§ 21.63 ........................................................................................................... 13

27

28

- iii -

1

**TABLE OF AUTHORITIES**
(continued)

2
**Page**

3

<u>**OTHER AUTHORITIES**</u>

4
*In the Matter of Rules and Regulations Implementing the*
*Telephone Consumer Protection Act of 1991,*

5
23 F.C.C.R. 559, 23 FCC Rcd. 559, 43 Communications Reg. (P&F) 877,
2008 WL 65485 (F.C.C.) ........................................................................................................... 14

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- iv -

**NOTICE OF MOTION AND MOTION**

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

NOTICE IS HEREBY GIVEN that on April 4, 2014 at 9:00 a.m., or as soon thereafter as the matter may be heard, in the Courtroom of the Honorable Edward J. Davila of the Northern District of California, located at San Jose Courthouse, Courtroom 4, 5th Floor, 280 South 1st Street, San Jose, CA 95113, Plaintiffs Stephanie Rose, Sandra Ramirez, Shannon Johnson, Amin Makin, Carol Duke, Jack Poster, and Freddericka Bradshaw ("Plaintiffs") on behalf of themselves and all others similarly situated, by and through their undersigned counsel, request that this Court grant final approval of the parties' proposed Settlement Agreement. Bank of America Corporation ("BAC"), Bank of America, N.A. ("BANA"), and FIA Card Services, N.A. ("FIA") (together, "Bank of America") do not object to the motion in the context of the parties' proposed settlement.

The Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities in Support of Motion for Final Approval, the accompanying declarations of Jonathan D. Selbin, Douglas J. Campion, Matthew R. Wilson, Beth E. Terrell, Mark Ankcorn, Joshua Swigart, Abbas Kazerounian, Alexander Burke, Syed Ali Saeed, Carol Duke, Jack Poster, Stephanie Rose, Sandra Ramirez, Shannon Johnson, Amin Makin, Freddericka Bradshaw, Cameron Azari, and the Honorable Edward A. Infante and the exhibits thereto, any oral argument that is held regarding this motion, the complete record in this litigation, and such other matters as the Court may consider.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

On December 6, 2013, the Court granted preliminary approval of the Settlement. *See* Dkt No. 67. Per the Court-approved notice plan, direct individual notice of the Settlement was disseminated to over 6.9 million Class Members via email and mail, notice was published in Parade, People, and Sports Illustrated magazines, an informative release was issued to press outlets throughout the country, and sponsored search listings were acquired on Google, Yahoo!, and Bing. All notices (individual and published) include a Spanish tagline that alerts Spanish-

- 1 -

1  speakers that a translated version of the Detailed Notice is available in Spanish on the Settlement

2  website, or may be obtained by calling the toll-free number.[1]  Class Members have until

3  March 21, 2014 to submit claims, opt out, or object.  *See* Dkt. No. 67.  The Fairness Hearing is

4  scheduled for April 4, 2014 at 9:00 a.m.  *Id.*  By this motion, Plaintiffs respectfully request that

5  the Court conduct a final review of the Settlement and approve the Settlement as fair, reasonable,

6  and adequate.

7         Class Counsel have extensive experience litigating TCPA class actions and other

8  consumer class actions, and were well-informed about the legal and factual issues involved in this

9  matter.  The Settlement is the product of extensive arm's-length, highly adversarial negotiations

10  between the parties and their counsel, which included three full-day mediation sessions with a

11  well-respected mediator and former judge, the Honorable Edward A. Infante (Ret.) of JAMS.

12         According to Judge Infante, "the result achieved by Class Counsel in the Amended

13  Settlement is fair, reasonable, and an excellent result for all Class Members."  Declaration of

14  Honorable Edward A. Infante (Ret.) in Support of Motions for Attorneys' Fees and Final

15  Approval ["Infante Decl."], ¶ 9. Plaintiffs alleged that Bank of America called Plaintiffs and

16  Class Members on their cell phones through the use of automatic telephone dialing systems

17  and/or using an artificial or prerecorded voice without their prior express consent, in violation of

18  the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(1)(A).  Class Counsel's

19  investigation and conversations with Plaintiffs and Class Members revealed that for many, the

20  primary goal was to put an end to these phone calls.  The Settlement provides Plaintiffs and Class

21  Members with this exact relief.  Specifically, Bank of America has developed and implemented

22  enhancements to their systems which are designed to prevent the calling of a cell phone unless a

23  loan servicing record is systematically coded to reflect the borrower's prior express consent to

24  call his/her cell phone.  In addition, the Settlement requires Bank of America to pay what is

25  believed to be the largest cash sum in the 22-year history of the TCPA—$32,083,905—into a

26  non-reversionary settlement fund ("Fund").  Eligible Class Members who file qualified claims

27

28  [1] Declaration of Cameron R. Azari, Esq. on Implementation and Adequacy of Settlement Notices
    and Notice Plan ("Azari Decl."), ¶¶ 17-31.

FIRST AMENDED CLASS ACTION COMPLAINT FOR
DAMAGES AND INJUNCTIVE RELIEF PURS 12-CV-
1476 MMA (JMA)

1   will receive a *pro rata* cash payment.

2       The relief the Settlement provides is outstanding, particularly in view of the risks and

3   delays involved in continued litigation.  The parties disagree on whether the TCPA allows prior

4   express consent for calls to a cellular telephone to be given at any time after origination of a

5   credit relationship.  Plaintiffs assert, based on certain rulings from the Federal Communications

6   Commission (the "FCC"), that consent may be given only at the time of the loan origination.  In

7   Bank of America's view, the FCC could not have intended this construction in the context of

8   credit and mortgage relationships that last for many years.  Bank of America instead believes that

9   the FCC rulings state that prior express consent can be given at any point in time and in any

10  manner during a credit relationship.  If the Court were to adopt Bank of America's view, both

11  class certification and proving liability would be challenging.

12      While the deadlines have not yet passed, the reaction from the Class thus far has been very

13  positive.  As of the date of this motion, approximately 215,997 claims have been submitted, while

14  just 156 persons have asked to be excluded.[2]  Class Counsel expect, based on their experience in

15  similar cases, that many more Class Members will submit claims as the March 21, 2014 deadline

16  approaches.

17      For the foregoing reasons and the others detailed below, the Settlement readily meets the

18  standards for final approval, and it should therefore be approved.

19  **II.     STATEMENT OF THE FACTS**

20      The factual and procedural backgrounds of these five actions[3] were set forth in detail in

21  Plaintiffs' Motion for Preliminary Approval.  For the Court's convenience, Plaintiffs provide a

22  short summary of the facts below.

23

24  ---

[2] Azari Decl., ¶¶ 35-36.  Class Counsel will provide an updated declaration from the Settlement

25  Administrator listing the number of claims, opt outs, and objections prior to the Final Approval
hearing.

26  [3] The proposed Settlement would resolve all claims in the above-entitled action and the related
case *Duke v. Bank of Am.*, Case No. 11-cv-04009-EJD (N.D. Cal.), as well as the claims in the

27  following similar actions: *Ramirez v. Bank of Am., N.A.*, Case No. 11-cv-02008 (S.D. Cal.);
*Johnson v. Bank of Am., N.A.*, Case No. 11-cv-3040 LAB (S.D. Cal.); *Makin v. Bank of Am., N.A.*,

28  Case No. 12-cv-1662 LAB (S.D. Cal.); and *Bradshaw v. Bank of Am. Corp*, 13-CV-0431 LAB
RBB (S.D. Cal.).

FIRST AMENDED CLASS ACTION COMPLAINT FOR
DAMAGES AND INJUNCTIVE RELIEF PURS 12-CV-
1476 MMA (JMA)

### A.    The TCPA Claims

Plaintiffs brought these actions alleging that Bank of America engaged in a systematic practice of calling or texting consumers' cell phones through the use of automatic telephone dialing systems and/or an artificial or prerecorded voice without their prior express consent, in violation of the TCPA, 47 U.S.C. § 227(b)(1)(A).  Bank of America denies all of Plaintiffs' allegations and argues that it had express consent to make automated, prerecorded calls to Plaintiffs and Class Members on their cell phones.

### B.    Plaintiffs Thoroughly Investigated the TCPA Claims

Plaintiffs thoroughly researched Bank of America's practices and their legal claims prior to filing suit.  For example, Class Counsel interviewed and collected relevant information and documents from affected Class Members, conducted legal research into the merits of the TCPA claims, and conducted research on Bank of America, including whether the bank had been investigated for any prior TCPA violations. [4]  This information was essential to Class Counsel's ability to understand the nature of the alleged problem, the language of the credit card agreements at issue, and potential remedies.

Plaintiffs also engaged in significant formal and informal discovery.  Plaintiffs' served and Bank of America answered written discovery.  Plaintiff Ramirez also successfully moved to compel discovery relating to whether Bank of America's alleged TCPA violations were knowing or willful.  *See Ramirez*, No. 11-cv-02008-LAB-KSC, Dkt. No. 31 (S.D. Cal. June 22, 2012).  In

---

[4] Declaration of Jonathan D. Selbin in Support of Plaintiffs' Motion for Attorneys' Fees and Final Approval of Class Action Settlement ["Selbin Decl."], ¶ 31; Declaration of Douglas J. Campion in Support of Plaintiffs' Motion for Attorneys' Fees and Final Approval of Class Action Settlement ["Campion Decl."], ¶ 22; Declaration of Beth E. Terrell in Support of Plaintiffs' Motion for Attorneys' Fees and Final Approval of Class Action Settlement ["Terrell Decl."], ¶ 22; Declaration of Matthew R. Wilson in Support of Plaintiffs' Motion for Attorneys' Fees and Final Approval of Class Action Settlement ["Wilson Decl."], ¶ 18; Declaration of Mark Ankcorn in Support of Plaintiffs' Motion for Attorneys' Fees and Final Approval of Class Action Settlement ["Ankcorn Decl."], ¶ 16; Declaration of Alexander H. Burke in Support of Plaintiffs' Motion for Attorneys' Fees and Final Approval of Class Action Settlement ["Burke Decl."], ¶ 18; Declaration of Abbas Kazerounian in Support of Plaintiffs' Motion for Attorneys' Fees and Final Approval of Class Action Settlement ["Kazerounian Decl."], ¶ 21; Declaration of Syed Ali Saeed in Support of Plaintiffs' Motion for Attorneys' Fees and Final Approval of Class Action Settlement ["Saeed Decl."], ¶ 13; Declaration of Joshua B. Swigart in Support of Plaintiffs' Motion for Attorneys' Fees and Final Approval of Class Action Settlement ["Swigart Decl."], ¶ 20; Declaration of Daniel G. Shay in Support of Plaintiffs' Motion for Attorneys' Fees and Final Approval of Class Action Settlement ["Shay Decl."], ¶ 12.

FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF PURS 12-CV-1476 MMA (JMA)

1   response to Plaintiffs' discovery, Bank of America produced thousands of pages of documents

2   that Plaintiffs reviewed.  Plaintiffs also took several 30(b)(6) depositions of Bank of America's

3   witnesses.  In addition, Plaintiffs reviewed additional confirmatory discovery relevant to the

4   Settlement, including additional documents, data, written discovery responses, and deponents.[5]

5        Finally, Plaintiffs engaged in motions practice, including by opposing Bank of America's

6   Motion to Dismiss.[6]

7        **C.    The Parties Mediated After Engaging in Full Classwide Discovery**

8        By the time the parties explored mediation, they had already litigated multiple cases for

9   over a year.  That litigation included contested motion practice, including a motion to dismiss,

10  and classwide discovery that was, in some cases, obtained only after Plaintiffs successfully

11  moved to compel it.  *See Ramirez*, No. 11-cv-02008-LAB-KSC, Dkt. No. 31 (S.D. Cal. June 22,

12  2012).[7]  The parties participated in three formal mediation sessions before the Honorable Edward

13  A. Infante (Ret.), on October 23, 2012, January 23, 2013, and June 20, 2013.  The parties also

14  participated in several subsequent telephone calls with Judge Infante.  In addition, the parties

15  submitted detailed mediation briefs to Judge Infante, setting forth their respective views on the

16  strengths of their cases.  During these mediation sessions, the parties discussed their relative

17  views of the law and the facts and potential relief for the proposed Class.  Counsel exchanged a

18  series of counterproposals on key aspects of the Settlement, including the parameters of the

19  business practice changes and monetary relief for the Class, and the meaning and interpretation of

20  the eligibility requirements.  At all times, the parties' settlement negotiations were highly

21  adversarial, non-collusive, and at arm's length.  Ultimately, Judge Infante made a mediator's

22  proposal to bridge the gap between the parties.  The Settlement Agreement is a result of these

23

24  ───────────────
    [5] Selbin Decl., ¶ 33; Campion Decl., ¶ 23; Terrell Decl., ¶¶ 18, 22; Wilson Decl., ¶ 20; Ankcorn
25  Decl., ¶ 17; Burke Decl., ¶ 20; Kazerounian Decl., ¶¶ 22-23; Saeed Decl., ¶ 16; Swigart Decl.,
    ¶¶ 21-22.
26  [6] Selbin Decl., ¶ 32; Meyer Decl., ¶ 19.  The hearing on the motion to dismiss was vacated
    pursuant to stipulation, so that the parties could engage in mediation.  *See Duke*, No. 12-cv-
27  04009-EJD, Dkt. No. 31 (N.D. Cal. Oct. 10, 2012).
    [7] *See also* Selbin Decl., ¶¶ 32-33; Campion Decl., ¶ 23; Terrell Decl., ¶¶ 18, 22; Wilson Decl.,
28  ¶¶ 19-20; Ankcorn Decl., ¶ 17; Burke Decl., ¶¶ 19-20; Kazerounian Decl., ¶¶ 22-23; Saeed Decl.,
    ¶ 16; Swigart Decl., ¶¶ 21-22.

- 5 -                FIRST AMENDED CLASS ACTION COMPLAINT FOR
                                                        DAMAGES AND INJUNCTIVE RELIEF PURS 12-CV-
                                                        1476 MMA (JMA)

1  arms-length negotiations, investigative efforts, and the parties' acceptance of the mediator's

2  proposal.  Infante Decl., ¶¶ 4-8.[8]

3  **D. The Proposed Settlement.**

4  The Settlement's terms were summarized in the Plaintiffs' preliminary approval papers,

5  are contained in the Settlement Agreement (Dkt. No. 59-1); and are again summarized below for

6  the Court's convenience.

7  **1. The Settlement Class**

8  The Settlement Class is comprised of all persons in the United States who:

9
10
11
12
> (1) received one or more non-emergency, default servicing telephone calls from Bank of America regarding a Bank of America Residential Mortgage Loan Account to a cellular telephone through the use of an automatic telephone dialing system and/or an artificial or prerecorded voice between August 30, 2007 and January 31, 2013 (Mortgage Calls);

13  **or**

14
15
16
> (2) received one or more non-emergency, default servicing telephone calls from Bank of America regarding a Bank of America Credit Card Account to a cellular telephone through the use of an automatic telephone dialing system and/or an artificial or prerecorded voice between May 16, 2007, and January 31, 2013 (Credit Card Calls);

17  **or**

18
19
20
21
> (3) received one or more non-emergency, default servicing text messages from Bank of America regarding a Bank of America Credit Card Account to a cellular telephone through the use of an automatic telephone dialing system and/or an artificial or prerecorded voice between February 22, 2009, and December 31, 2010 (Credit Card Texts).  This excludes those identified individuals who are included in paragraph (2) above.

22  The confirmatory discovery confirms that approximately 4,171,217 persons in the Class received

23  Mortgage Calls; approximately 2,449,350 persons received Credit Card Calls; and approximately

24  1,103,293 persons Received Credit Card Texts.[9]  The Class has been separated by groups in this

25  way for the purpose of clarity only; the relief available under the Settlement is identical for the

26  Class Members in each of these groups.

27
28
[8] *See also* Selbin Decl., ¶¶ 34; Campion Decl., ¶ 24; Terrell Decl., ¶¶ 19, 22; Wilson Decl., ¶¶ 21; Ankcorn Decl., ¶ 18; Burke Decl., ¶¶ 21; Saeed Decl., ¶ 17.
[9] Dkt. No. 59-2 [Selbin Decl. in Support of Preliminary Approval], ¶ 14.

- 6 -  FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF PURS 12-CV-1476 MMA (JMA)

**2.      Prospective Relief for All Class Members**

The Settlement focuses on prospective practice changes designed to protect Settlement Class Members from receiving automated calls in the future.  Specifically, in consideration for the Settlement and in response to the Complaints filed in the Actions, Bank of America developed and implemented significant enhancements to its servicing systems that are designed to prevent the calling of a cell phone unless a loan servicing record is systematically coded to reflect the borrower's prior express consent to call his or her cell phone.  Agreement § 4.01.

**3.      Monetary Relief for Settlement Class Members**

In addition to the prospective relief for the Settlement Class, the Settlement creates a non-reversionary Settlement Fund of $32,083,905.  Agreement § 4.02.  Out of this Fund, eligible Settlement Class Members who file a qualified claim will receive a Settlement Award in the form of a cash payment.  *Id.*  Settlement Class Members may make (1) one claim for any Mortgage Calls and (2) one claim for any Credit Card Calls or for any Credit Card Texts.  Class Members may not make both a claim for Credit Card Calls and a claim for Credit Card Texts.  *Id.*

The amount of each Class Member's payment will be based on a *pro rata* distribution, depending on the number of valid and timely claims.  *Id*. § 4.04.  While it is not possible to predict the precise amount of the payments until all claims have been submitted, Class Counsel, based on their experience in similar TCPA class actions, estimate awards in the range of $20 to $40 after deductions for Court-approved attorneys' fees and costs, Court-approved incentive awards to the Plaintiffs, and costs of notice and claims administration.  *See id*.  Checks will be valid for 180 days.  *Id.* § 9.03.

In order to exercise the right to obtain the relief outlined above, Class Members need only complete a simple, one-page claim form and provide it to the Claims Administrator via the Internet site or by mail.  *Id.* § 9.02.  Class Members have until March 21, 2014 to submit claims or to submit written requests to be excluded from or to opt out of the Class.  *Id.* §§ 2.09, 2.10.  In the event that the combined amounts of any settlement payment checks to Class Members that remain uncashed for more than 210 days after the date on the checks exceed $50,000, a second

1    *pro rata* distribution will be made to all Class Members who made valid and timely claims. *Id.*

2    § 7.04e.

3                          **4.**      *Cy Pres* **Distributions**

4          In the event that the combined amounts of any settlement payment checks to Class

5    Members that remain uncashed for more than 210 day is equal to or less than $50,000, the money

6    will be distributed *cy pres* to the Electronic Frontier Foundation ("EFF"). Agreement § 7.04f.

7    EFF is a non-profit organization whose mission, in part, is to protect consumers from invasions of

8    privacy resulting from the use of technologies, such as cell phones. None of the attorneys among

9    Class Counsel have any relationship with EFF. Dkt. No. 65 [Hutchinson Decl.], ¶ 2.

10          If, for any reason, the Parties determine that the proposed recipient is no longer an

11    appropriate recipient, or the Parties no longer agree on the proposed recipient, or the Court

12    determines that the proposed recipient is not or is no longer an appropriate recipient, the Parties

13    shall agree on a replacement recipient of such monies, subject to Court approval. Agreement

14    § 7.04f.

15                          **5.**      **Class Release**

16          In exchange for the benefits allowed under the Settlement, Class Members who do not opt

17    out will provide a release tailored to the practices at issue in this case. Specifically, they will

18    release all claims "that arise out of or relate" to the "use of an 'automatic telephone dialing

19    system' or 'artificial or prerecorded voice' to contact or attempt to contact Settlement Class

20    Members." Agreement § 14.01.

21                     **6.**      **Attorneys' Fees and Costs and Class Representative Service Awards**

22          Concurrently with the filing of this motion, Class Counsel have separately moved the

23    Court for an award of attorneys' fees, inclusive of costs, in the amount of 25 percent of the

24    Settlement Fund. Class Counsel have also requested service awards to the seven Class

25    Representatives in the amount of $2,000 each, or $14,000 total. The enforceability of the

26    Settlement is not contingent on Court approval of an award of attorneys' fees or costs or service

27    awards. Agreement § 5.01.

28

III.    **CLASS NOTICE HAS BEEN DISSEMINATED**

The notice program approved by the Court (*see* Dkt. No. 67) has been, and is continuing to be, implemented by the parties and the Court-approved Settlement Administrator in accordance with the Court's direction.[10]

A.    **Direct Mail and Email Notice**

Beginning on December 17, 2013 and continuing through December 20, 2013, Epiq disseminated 670,676 notices via email to all potential Settlement Class Members for whom a facially valid email address was available.[11]  For any email that was bounced back as undeliverable, at least two additional attempts were made to deliver the notice by email.[12]  After completion of this initial effort, Epiq received back 342,022 undeliverable emails.  Epiq thereafter determined that a subsequent effort was warranted, and accordingly send the email notice again to these 342,022 addresses January 24 and 25, 2014.[13]  This subsequent effort resulted in the successful delivery of 92,278 of the previously undeliverable emails.[14]  As of February 18, 2014, 249,744 emails remain undeliverable.[15]

Also beginning on December 17, 2013 and continuing through December 27, 2013, Epiq disseminated 6,234,355 individual postcard notices by USPS first class mail.[16]  On January 10, 2014, an additional 31,170 Summary Postcard Notices were mailed to Class Members for whom multiple records were associated with a single email address.[17]  Prior to mailing the postcard notice, Epiq ran all mailing addresses through the National Change of Address Database.[18]  For mailed notices that were returned as undeliverable, Epiq performed additional public record research.[19]  Combined with Class Member records for which the notice via email was ultimately

---

[10] *See* generally Azari Decl.
[11] *Id.*, ¶ 18.
[12] *Id.*
[13] *Id.*, ¶ 19.
[14] *Id.*
[15] *Id.*
[16] *Id.*, ¶ 21.
[17] *Id.*
[18] *Id.*, ¶ 22.
[19] *Id.*, ¶ 24.

1   returned as undeliverable, Epiq has mailed an additional 664,515 Summary Postcard Notices as of

2   February 18, 2014.[20]

3          As of February 18, 2014, Epiq has emailed and mailed notices to 6,936,201 unique Class

4   Members, with notice to the remaining 318,179 unique, likely Class Members currently known to

5   be undeliverable.[21]  All individual notices included a Spanish tagline that alerts Spanish-speakers

6   that a Spanish version of the Detailed Notice is available on the Settlement website or may be

7   obtained by calling the toll-free Settlement number.[22]

8          **B.    Published Notice**

9          On January 5, 2014, notice was published in *Parade* magazine, which appears in over 590

10  Sunday newspapers nationwide.[23]  *Parade* has an estimated circulation of 32.5 million.[24]  Notice

11  also appeared twice in *People* magazine, on January 1, 2014 and January 10, 2014, and once in

12  *Sports Illustrated* magazine, on January 8, 2014.[25]  *People* and *Sports Illustrated* have a combined

13  circulation of 6.47 million.[26]  In addition, a party-neutral informational release was issued on

14  December 17, 2013 to approximately 4,200 print and broadcast and 5,500 online press outlets

15  throughout the United States.[27]  Furthermore, sponsored search listings were purchased on the

16  three most highly-visited search engines: Google, Yahoo!, and Bing.[28]

17         **C.    CAFA Notice**

18         Bank of America provided notice of the Settlement to the officials designated pursuant to

19  the Class Action Fairness Act, 28 U.S.C. § 1715.  Dkt. No. 72.  To date, there have been no

20  objections from any of the Attorneys' Generals to Class Counsel's knowledge.[29]

21

22  _____

23  [20] *Id.*

24  [21] *Id.*, ¶ 25.
    [22] *Id.*, Attachments 1 & 2.

25  [23] *Id.*, ¶ 26.
    [24] *Id.*

26  [25] *Id.* ¶ 27.
    [26] *Id.*

27  [27] *Id.*, ¶ 29.
    [28] *Id.*, ¶ 31.

28  [29] Selbin Decl., ¶ 44.

- 10 -          FIRST AMENDED CLASS ACTION COMPLAINT FOR
                                                   DAMAGES AND INJUNCTIVE RELIEF PURS 12-CV-
                                                   1476 MMA (JMA)

1

### D.  Settlement Website and Toll-Free Number

2   On December 13, 2013, Epiq established a Settlement Website

3   (www.boatcpasettlement.com/en) where claims may be submitted electronically.[30]  A Spanish

4   version of the Settlement Website (www.boatcpasettlement.com/es) was also established, and the

5   Detailed Notice and Claim Form were translated into Spanish and made available for download.[31]

6   The Settlement Website contains the following: the complaints; the Settlement Agreement and

7   exhibits; the Preliminary Approval Order, the Long Form Notice, a downloadable Claim Form,

8   Frequently-Asked Questions, and the toll-free number.  Class Counsel's Motion for Attorneys'

9   Fees will be uploaded to the website immediately after filing.  As of February 18, 2014, the

10  website has received 223,245 unique visitors.[32]

11  In addition, Epiq timely established, on December 13, 2013, a toll-free telephone number

12  dedicated to answering telephone inquiries from class members and permitting class members to

13  request copies of the long-form notice and claim forms.[33]  The toll-free number also contains

14  Spanish language options.[34]  As of February 18, 2014, Epiq has received 116,393 calls.[35]  Class

15  Counsel have also responded to several inquiries from Class Members regarding the Settlement.[36]

16  On February 4, 2014, Class Counsel alerted Epiq to the fact that some Class Members

17  were having trouble filing a claim online.[37]  The website error was immediately fixed.[38]  Epiq

18  determined that 7,983 claims were previously not submitted potentially as a result of the error.[39]

19  To remedy this problem, these 7,983 attempted claims will be deemed submitted, and the Class

20

21

22  [30] Azari Decl., ¶ 32.
23  [31] *Id.*
    [32] *Id.*
24  [33] *Id.*, ¶ 33.
25  [34] *Id.*
    [35] *Id.*
26  [36] Selbin Decl., ¶ 36; Campion Decl., ¶ 25; Terrell Decl., ¶ 22; Kazerounian Decl., ¶ 24; Saeed Decl., ¶ 19; Swigart Decl., ¶ 23.
27  [37] Selbin Decl., ¶ 45; Azari Decl., ¶ 37.
28  [38] Azari Decl., ¶ 37.
    [39] *Id.*

- 11 -

1  Members who tried to submit these claims will be alerted via a separate postcard notice to the fact

2  that their claim will be deemed complete without requiring any further action from them.[40]

3       **E.**     **Settlement Administration Costs**

4       The costs of settlement administration as of February 18, 2014 total just over $3 million.[41]

5  This is slightly higher than Epiq's initial estimation of costs ($2,972,000) provided at preliminary

6  approval due to (1) the greater than anticipated data clean-up and de-duplication efforts required;

7  (2) a higher than expected email notice undeliverable rate; and (3) a greater than expected toll-

8  free line volume and a more successful than expected claim filing rate (approximately 30,000

9  more claims filed to date than projected for the life of the settlement).  An updated estimated cost

10  to complete settlement administration will be provided prior to the March 21, 2014 claim, opt-out,

11  and objection deadlines, and prior to the final approval hearing.[42]

12  **IV.**     **CLASS MEMBERS HAVE RESPONDED POSITIVELY TO THE SETTLEMENT**

13       The response from the Class thus far has been very positive.  The deadline for Class

14  Members to submit claims is not until March 21, 2014.  Yet, Class Members have already filed

15  215,997 claims.[43]  Class Counsel expect that many more Class Members will make claims nearer

16  to the deadline.  Moreover, as of the date of this motion, Epiq has received only 156 requests for

17  exclusion.[44]

18  **V.**     **FINAL APPROVAL IS WARRANTED**

19       **A.**     **The Class Action Settlement Approval Process**

20       Federal courts strongly favor and encourage settlements, particularly in class actions and

21  other complex matters, where the inherent costs, delays, and risks of continued litigation might

22  otherwise overwhelm any potential benefit the class could hope to obtain.  *See Class Plaintiffs v.*

23  *City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting the "strong judicial policy that favors

24  settlements, particularly where complex class action litigation is concerned"); *see also* 4 *Newberg*

25

26  [40] *Id.*

27  [41] *Id.*, ¶ 39.
    [42] *Id.*

28  [43] *Id.*, ¶ 36.
    [44] *Id.*, ¶ 35.

- 12 -

1  *on Class Actions* § 11.41 (4th Ed. 2002) (citing cases).  The traditional means for handling claims

2  like those at issue here—individual litigation—would require a massive expenditure of public and

3  private resources and, given the relatively small value of the claims of the individual Class

4  Members, would be impracticable.  Thus, the proposed Settlement is the best vehicle for Class

5  Members to receive the relief to which they are entitled in a prompt and efficient manner.

6    The *Manual for Complex Litigation* (Fourth) (2004) § 21.63 ("*Manual for Compl. Lit.*")

7  describes a three-step procedure for approval of class action settlements:

8    (1)  Preliminary approval of the proposed settlement at an informal hearing;

9    (2)  Dissemination of mailed and/or published notice of the settlement to all affected class

10  members; and

11    (3)  A "formal fairness hearing" or final approval hearing, at which class members may be

12  heard regarding the settlement, and at which evidence and argument concerning the fairness,

13  adequacy, and reasonableness of the settlement may be presented.

14  This procedure, used by courts in this Circuit and endorsed by class action commentator Professor

15  Newberg, safeguards class members' due process rights and enables the court to fulfill its role as

16  the guardian of class interests.  4 Newberg § 11.25.

17    The first two steps in this process have occurred.  With this motion, Plaintiffs respectfully

18  request that the Court take the third and final step in the process by granting final approval of the

19  settlement.

20    **B.    The Settlement is Fair, Reasonable, and Adequate, and Should be Approved**

21    It is well settled that the law favors the compromise and settlement of class action suits.

22  *See Churchill Village, LLC v. Gen. Elec.,* 361 F.3d 566, 576 (9th Cir. 2004); *Class Plaintiffs v.*

23  *City of Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992); *Officers for Justice v. Civil Serv. Comm'n,*

24  688 F.2d 615, 625 (9th Cir. 1982) ("[V]oluntary conciliation and settlement are the preferred

25  means of dispute resolution.  This is especially true in complex class action litigation….").

26    A proposed class action settlement should be approved if the Court, after allowing absent

27  class members an opportunity to be heard, finds that the settlement is "fair, reasonable, and

28  adequate." Fed. R. Civ. P. 23(e)(2).  When assessing a proposed settlement, "the court's intrusion

1   upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit

2   must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the

3   product of fraud or overreaching by, or collusion between, the negotiating parties, and the

4   settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for*

5   *Justice*, 688 F.2d at 625.

6        Courts in the Ninth Circuit consider a number of factors in evaluating class settlements,

7   recognizing that "it is the settlement taken as a whole, rather than the individual component parts,

8   that must be examined for overall fairness." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir.

9   2003). The Ninth Circuit has set forth the following list of factors to be considered: (1) the

10  strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further

11  litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount

12  offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6)

13  the experience and views of counsel; (7) the presence of a governmental participant; and (8) the

14  reaction of the class members to the proposed settlement. *Churchill Village*, 361 F.3d at 575.

15       Application of these factors here confirms that the settlement is fair, reasonable, and

16  adequate, and should be finally approved.

17       **1.**    **The Strength of the Plaintiffs' Case and the Risk, Expense, Complexity, and Likely Duration of Further Litigation**

18

19       Plaintiffs continue to believe that their claims against Bank of America have merit and

20  that they could make a compelling case if their claims were tried. If Plaintiffs were to prevail,

21  Bank of America could face hefty statutory penalties. Nevertheless, it is apparent that Plaintiffs

22  and the Class would face a number of difficult challenges if the litigation were to continue.

23       **a.**    **Challenges to the Claims on Their Merits**

24       The parties have competing interpretations of what constitutes "prior express consent"

25  under the TCPA based on the FCC's January 4, 2008 declaratory ruling, *In the Matter of Rules*

26  *and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 F.C.C.R. 559,

27  23 FCC Rcd. 559, 43 Communications Reg. (P&F) 877, 2008 WL 65485 (F.C.C.) (hereinafter

28  "Declaratory Ruling"). The Declaratory Ruling is the FCC's official interpretation of the

1   governing provisions of the TCPA.  The FCC's Declaratory Ruling addresses the meaning of

2   "prior express consent" and states:  "prior express consent is deemed to be granted only if the

3   wireless number was provided by the consumer to the creditor, and that such number was

4   provided during the transaction that resulted in the debt owed."  Plaintiffs maintain that Paragraph

5   10 requires that the cell phone number be "provided during the transaction that resulted in the

6   debt owed," *i.e.* during loan "origination."  Bank of America, however, interprets the term

7   "transaction" broadly to mean any time during the multi-year life of the loan.  Based on this

8   interpretation, Bank of America maintains that some or all of the Class Members gave it prior

9   express consent to contact them at their cell phone numbers.  If the Court found that the FCC's

10  Declaratory Ruling and/or the TCPA permits "prior express consent" to be given: (1) after loan

11  origination on documents such as correspondence, updated information forms, forbearance

12  requests, and the like, and/or (2) verbally, the amount of recoverable damages could be reduced

13  significantly or eliminated altogether.  *See, e.g., Arthur v. Sallie Mae, Inc.,* No. 10-cv-132413,

14  2012 U.S. Dist. LEXIS 132413, at *4 (W.D. Wash. Sept. 17, 2012) (granting final approval of

15  TCPA settlement "in part because of the novelty of central issues").  Even if Plaintiffs prevailed

16  on their interpretation of the FCC's Declaratory Ruling, Bank of America would likely appeal the

17  decision, which would result in substantial delay.  The Settlement provides substantial relief to

18  Class Members without further delay.

19              **b.     The Risk of Maintaining Class Action Status Throughout Trial**

20              While Plaintiffs continue to believe that class certification would be achievable, Bank of

21  America consistently argued that class certification would be inappropriate in these actions due to

22  the question of whether Class Members consented to the calls at issue.  If the Court were to

23  accept Bank of America's interpretation of "prior express consent" under the statute, identifying

24  which class members consented and in what manner could be difficult.  And, courts are divided

25  as to whether such consent issues predominate over common questions in TCPA cases, depending

26  on the circumstances of the case. *Compare Meyer v. Portfolio Recovery Associates*, 707 F.3d

27  1036, 1042 (9th Cir. 2012) (upholding class certification) *with Gene And Gene LLC v. BioPay*

28  *LLC,* 541 F.3d 318, 328 (5th Cir. 2008) (reversing class certification); *see also Arthur,* 2012 U.S.

1    Dist. LEXIS 132413, at *4 (granting final approval of TCPA settlement, noting that "[c]ourts

2    have split on class certification in TCPA cases, increasing the risk of maintaining the class action

3    through trial"). If Bank of America were able to present convincing facts to support its position,

4    there is a risk that the Court would decline to certify the class, leaving only the named Plaintiffs

5    to pursue their individual claims.

6                    **2.        The Amount Offered in Settlement**

7           The Settlement provides the largest recovery ever obtained in a TCPA class action. By

8    requiring Bank of America to pay $32,083,905 into a non-reversionary Settlement Fund, the

9    Settlement provides substantial monetary relief for all Class Members. *See Arthur,* 2012 U.S.

10   Dist. LEXIS 132413, at *4-5 (granting final approval where the $24,150,000 fund was, at that

11   time, "the larges TCPA recovery to Class Counsel's knowledge"). It also establishes significant

12   business practice changes aimed at stopping the unwanted calls at issue. According to Judge

13   Infante, "the result achieved by Class Counsel in the Amended Settlement is fair, reasonable, and

14   an excellent result for all Class Members." Infante Decl., ¶ 9.

15                       **a.        The Business Practice Changes**

16          Class Counsel's interviews with Plaintiffs and Class Members revealed that ending the

17   autodialed and/or prerecorded calls to their cell phones was their key goal.[45] The Settlement

18   solidifies significant practice changes aimed at doing just that. Specifically, during this litigation,

19   Bank of America made changes to their policies and practices to prevent robocalling cell phones

20   unless a loan servicing record is systematically coded to reflect the borrower's prior express

21   consent to call his or her cell phone. Agreement § 4.01. Bank of America's new procedure of

22   coding a borrower's prior express consent, such that consent is clearly reflected in that customer's

23   account file, was developed only after Class Counsel commenced the *Rose* action. *Id.* Class

24   Counsel has investigated and confirmed the implementation of these procedures through

25   discovery. *Id.*

26                            **b.        The Monetary Relief**

27          The Settlement requires Bank of America to pay $32,083,905 into a Settlement Fund, out

28

---

[45] Selbin Decl., ¶ 43.

- 16 -

1  of which eligible Class Members will receive their *pro rata* share of cash payments. *Id*. § 4.03.

2  No amount of this fund will revert back to Bank of America. The common fund created by this

3  Settlement is the largest cash fund of which Class Counsel are aware in a TCPA class action case.

4  The TCPA has been on the books since 1991, and it has been litigated extensively. It is simply an

5  outstanding result for Class Members, particularly because TCPA damages are purely statutory

6  damages in that Class Members have not suffered any out-of-pocket losses or other economic

7  harm.

8              **3.    The Extent of Discovery Completed and the Stage of Proceedings**

9          The Settlement was informed by Class Counsel's thorough investigation and analysis of

10  the factual and legal issues involved. As detailed above, Class Counsel spent significant time

11  thoroughly investigating the factual and legal claims involved in these Actions, as well as

12  interviewing and collecting relevant information from Class Members, prior to filing the

13  Complaints.[46] In addition, Plaintiffs served and Bank of America answered written requests for

14  production and interrogatories. Plaintiffs also reviewed thousands of pages of documents.

15  Plaintiffs took the depositions of five different 30(b)(6) witnesses. Plaintiffs also successfully

16  moved to compel discovery in the *Ramirez* action. *See Ramirez*, No. 11-cv-02008-LAB-KSC,

17  Dkt. No. 31 (S.D. Cal. June 22, 2012). In addition, Bank of America voluntarily provided Class

18  Counsel with, and Class Counsel reviewed, the call record data and other information necessary

19  to confirm that the Settlement is fair, reasonable, and adequate.[47] And, Plaintiff Ramirez was

20  deposed.[48]

21          Settlement negotiations were prolonged and hard-fought, spanning many months. The

22  parties participated in three full-day mediations on October 23, 2012, January 23, 2013, and

23  June 20, 2013. The negotiation process nearly broke down several times as Class Counsel

24

25  _____

     [46] Selbin Decl., ¶ 31; Campion Decl., ¶ 22; Terrell Decl., ¶ 22; Wilson Decl., ¶ 18; Ankcorn Decl.,

26  ¶ 16; Burke Decl., ¶ 18; Kazerounian Decl., ¶ 21; Saeed Decl., ¶ 13; Swigart Decl., ¶ 20; Shay
     Decl., ¶ 12.

27  [47] Selbin Decl., ¶¶ 33-34; Campion Decl., ¶¶ 23-24; Terrell Decl., ¶¶ 18-19, 22; Wilson Decl.,
     ¶¶ 20-21; Ankcorn Decl., ¶¶ 17-18; Burke Decl., ¶ 20; Kazerounian Decl., ¶¶ 22-23; Saeed Decl.,

28  ¶ 13; Swigart Decl., ¶¶ 16-17.
     [48] Ramirez Decl., ¶ 6.

1    continually advocated for a larger fund for the Class, while Defendants wanted a smaller fund.

2    The case settled only after the parties accepted a mediator's proposal.  Thereafter, the parties

3    spent numerous hours negotiating the final settlement terms and negotiating, drafting, and

4    revising the Memorandum of Understanding and the Settlement Agreement.  Infante Decl., ¶¶ 7-

5    8.[49]

6         Accordingly, the final terms of settlement were agreed to only after Class Counsel

7    thoroughly vetted the claims and potential damages through the exchange of both informal and

8    formal discovery and participated in lengthy arm's length negotiations.

9                    **4.        The Experience and Views of Counsel**

10         Class Counsel are particularly experienced in litigating TCPA claims, and had a keen

11   understanding of the legal and factual issues involved in this case.[50]  Class Counsel fully endorse

12   the settlement as fair, adequate, and reasonable.  The fact that qualified and well-informed

13   counsel endorse the settlement as being fair, reasonable, and adequate weighs heavily in favor of

14   the Court approving the settlement.  *See In re Omnivision Technologies, Inc.*, 559 F. Supp. 2d

15   1036, 1043 (N.D. Cal. 2007) (quoting *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal.

16   1979)) ("The recommendations of plaintiffs' counsel should be given a presumption of

17   reasonableness."); *Linney v. Cellular Alaska P'ship*, No. C-96-3008 DLJ, 1997 U.S. Dist. LEXIS

18   24300, at *16 (N.D. Cal. July 18, 1997) ("The involvement of experienced class action counsel

19   and the fact that the settlement agreement was reached in arm's length negotiations, after relevant

20   discovery had taken place create a presumption that the agreement is fair.").

21                    **5.        The Presence of a Governmental Participant**

22         No governmental agency is directly involved in this lawsuit; however, Bank of America

23   has notified the officials designated pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715

24

25

26   [49] *See also* Selbin Decl., ¶¶ 34; Campion Decl., ¶ 24; Terrell Decl., ¶¶ 19, 22; Wilson Decl., ¶¶ 21; Ankcorn Decl., ¶ 18; Burke Decl., ¶¶ 21; Saeed Decl., ¶ 17.

27   [50] Selbin Decl., ¶ 3; Campion Decl., ¶ 6; Terrell Decl., ¶ 3; Wilson Decl., ¶ 3; Ankcorn Decl., ¶ 3; Burke Decl., ¶¶ 2-6; Saeed Decl., ¶ 2, 7; Shay Decl. ¶ 1.

28

FIRST AMENDED CLASS ACTION COMPLAINT FOR
DAMAGES AND INJUNCTIVE RELIEF PURS 12-CV-
1476 MMA (JMA)

1  of the proposed settlements.  Dkt. No. 72.  To date, no governmental entity has raised objections

2  or concerns about the Settlement.

3                **6.**      **The Reaction of Class Members**

4        Because the claims deadlines have not yet passed, this factor cannot be fully evaluated as

5  of the date of this filing.  Nevertheless, the initial reaction of Class Members has been very

6  positive.  Class Members still have more than one month—until March 21, 2014—to submit a

7  claim, and yet already 215,997 claims have been submitted.[51]  Only 156 Class Members of have

8  requested to be excluded from the Settlement.[52]

9                **7.**      **The Settlement in the Product of Arm's Length Negotiations**

10        In addition to considering the above factors, the Ninth Circuit has indicated that the court

11  should carefully review the settlement for any signs of collusion or conflicts of interest.  *See In re*

12  *Bluetooth Headset Prods. Liab. Litig*., 654 F.3d 935, 946 (9th Cir. 2011).  As detailed above, the

13  Settlement is the result of lengthy, adversarial arm's-length negotiations between attorneys

14  experienced in the litigation, certification, trial, and settlement of nationwide class action cases, as

15  well as three full-day mediations presided over by a well-respected mediator and former judge,

16  the Honorable Edward A. Infante (Ret.) of JAMS.  *See, generally,* Infante Decl.  Accordingly, no

17  signs of collusion or conflicts of interest are present here, because there was no such collusion or

18  conflicts of interest.

19  **VI.**    **CONCLUSION**

20        For all of the foregoing reasons, Plaintiffs respectfully request that the Court enter an

21  Order granting final approval of the Settlement.  Plaintiffs will submit a proposed order after the

22  claims, opt-out, and objection deadlines have passed.

23

24

25

26

27

28

---

[51] Azari Decl., ¶ 36.

[52] *Id.,* ¶ 35.

- 19 -

FIRST AMENDED CLASS ACTION COMPLAINT FOR
DAMAGES AND INJUNCTIVE RELIEF PURS 12-CV-
1476 MMA (JMA)

1    Dated: February 19, 2014       Respectfully submitted,

2                              LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

3

4                              By: */s/ Jonathan D. Selbin*
5                                  Jonathan D. Selbin

6                              Jonathan D. Selbin
                             LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
7                              250 Hudson Street, 8th Floor
                             New York, NY  10013
8                              Telephone:  (212) 355-9500
                             Facsimile:  (212) 355-9592

9                              Daniel M. Hutchinson
                             Nicole D. Reynolds
10                            LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
                           275 Battery Street, 29th Floor
11                            San Francisco, CA  94111-3339
                           Telephone:  415.956.1000
12                            Facsimile:  415.956.1008

13                            Matthew R. Wilson
                           MEYER WILSON CO., LPA
14                            1320 Dublin Road, Suite 100
                           Columbus, OH  43215
15                            Telephone:  (614) 224-6000
                           Facsimile:  (614) 224-6066
16

17                            Beth E. Terrell
                           Kimberlee L. Gunning
18                            TERRELL MARSHALL DAUDT & WILLIE PLLC
                           936 North 34th Street, Suite 40
19                            Seattle, WA 98103
                           Telephone:  (206) 816-6603
20                            Facsimile:  (206) 350-3528

21                            Mark Ankorn
                           CASEY GERRY SCHENK FRANCAVILLA BLATT, &
22                            PENFIELD LLP
                           110 Laurel Street
23                            San Diego, CA 92101
                           Telephone:  (619) 238-1811
24                            Facsimile:  (619) 544-9232

25

26                            Joshua B. Swigart
                           HYDE & SWIGART
27                            2221 Camino Del Rio South, Suite 101
                           San Diego, CA 92108
28                            Telephone:  (619) 233-7770
                           Facsimile:  (619) 297-1022

1

2   Abbas Kazerounian
    KAZEROUNIAN LAW GROUP, APC
3   2700 North Main Street, Suite 1000
    Santa Ana, CA 92705
4   Telephone:  (800) 400-6808
    Facsimile:  (800) 520-5523
5

6   Douglas J. Campion
    LAW OFFICES OF DOUGLAS J. CAMPION
7   409 Camino Del Rio South, Suite 303
    San Diego, CA 92108
8   Telephone:  (619) 299-2091
    Facsimile:  (619) 858-0034
9

10  Alexander H. Burke
    BURKE LAW OFFICES, LLC
11  155 North Michigan Avenue, Suite 9020
    Chicago, IL 60601
12  Telephone:  (312) 729-5288
    Facsimile:  (312) 729-5289
13

14  Syed Ali Saeed
    SAEED & LITTLE LLP
15  1512 N. Delaware Street
    Indianapolis, IN 46202
16  Telephone:  (317) 614-5741
    Facsimile:  (888) 422-3151
17

18  Daniel G. Shay
    LAW OFFICES OF DANIEL G. SHAY
19  409 Camino Del Rio South, Suite 101B
    San Diego, CA 92108
20  Telephone:  (619) 222-7429
    Facsimile:  (866) 431-3292
21

22  Steven E. Kaftal
    LAW OFFICES OF STEVEN E. KAFTAL
23  409 Camino Del Rio South, Suite 101B
    San Diego, CA 92108
24  Telephone:  (619) 786-7838
    Facsimile:  (888) 431-3292
25
    *Attorneys for Plaintiffs and the Proposed Class*
26

27

28

1160925.2                - 21 -                FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF PURS 12-CV-1476 MMA (JMA)