Douglas J. Campion, SBN #75381
Email: doug@djcampion.com
**LAW OFFICE OF DOUGLAS J. CAMPION, APC**
409 Camino Del Rio South, Suite 303
San Diego, California 92108
Telephone: (619) 299-2091
Facsimile: (619) 858-0034

Jonathan D. Selbin, SBN 170222
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, NY 10013
Telephone: (212) 355-9500
Facsimile: (212) 355-9592

*Attorneys for Plaintiffs and the Proposed Class*

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHENIE ROSE, on behalf herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BANK OF AMERICA CORPORATION, and FIA CARD SERVICES, N.A.,<br><br>Defendants. | CASE NO. 5:11-cv-02390-EJD (PSG)<br><br>**DECLARATION OF DOUGLAS J. CAMPION IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS AND FOR APPROVAL OF INCENTIVE PAYMENTS**<br><br>**Hon. Edward J. Davila**<br><br>**Hearing Date: April 4, 2014<br>Time: 9:00 a.m.**<br><br>**Courtroom: 4, 5th Floor** |

| | |
|---|---|
| 1 | CAROL DUKE AND JACK POSTER, on behalf of themselves and all others similarly situated, |
| 2 | |
| 3 | |
| 4 | |
| 5 | Plaintiffs, |
| 6 | v. |
| 7 | BANK OF AMERICA, N.A.; BANK OF AMERICA CORPORATION; AND FIA CARD SERVICES, N.A., |
| 8 | |
| 9 | Defendants. |

10

11  I, Douglas J. Campion, declare as follows:

12  1. I submit this declaration in support of Plaintiffs' Motion for Attorneys' Fees and Costs and in support of an award of incentive payments for the Class representatives Rose and Bradshaw. If called as a witness, I would competently testify to the matters herein from my own personal knowledge.

2. I am the owner of my firm Law Offices of Douglas J. Campion, APC. I am class counsel in this case, and was the counsel that filed the lead case, *Rose v. Bank of America and FIA Card Services, N.A.* I am also co-counsel of record for Plaintiff Shannon Johnson in the *Johnson v. Bank of America* case, Case No. 11cv3040 H BGS, consolidated with this case for purposes of settlement. Inc.

3. I am a member in good standing of the bar of the State of California. I am also admitted in every federal district in California and have handled federal litigation in a number of districts across the country during my 37 year career.

/ / /

/ / /

DECl. OF DOUGLAS J. CAMPION ISO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND INCENTIVE AWARDS  
21811481.1

1

5:11-CV-02390-EJD (PSG)

## I. BACKGROUND AND EXPERIENCE

### Counsel's Experience

4. The Law Offices of Douglas J. Campion, APC has been confirmed as class counsel for purposes of this action and proceeding with the settlement. My experience and almost 37 years in practice in California are sufficient to justify my hourly billing rate of $675 in this case. To that end, I hereby submit for the Court's consideration my qualifications and a summary of my experience which justify that hourly rate.

5. I am the only principal in my law firm. I was admitted to the State Bar of California in 1977 and have been a member in good standing since that time. Since my admission, I have been engaged in litigation and I have had extensive experience in business litigation prior to working in the class action field. I worked in San Jose, California with Anthony J. Trepel from approximately 1983 through 1988, and the firm's name was Trepel, Kahn & Campion, P.A. In 1989, I joined the San Diego office of a Philadelphia law firm, Barrack, Rodos & Bacine. Our office engaged in class and derivative litigation exclusively, primarily specializing in plaintiff's class action securities cases. I resigned from the firm in 1996. Barrack, Rodos & Bacine was often co-counsel with Milberg Weiss Bershad Hynes & Lerach in class and derivative actions and litigated the same types of cases. A few examples of the cases our firm litigated, separately or with co-counsel, and in which I actively participated, are as follows:

   a. The Michael Milken – Drexel securities litigation, with a joint recovery for all plaintiffs of more than a billion dollars;

   b. The savings and loan securities and derivative litigation of the early 1990's, in which I represented or litigated against California Federal,

Far West Financial, Financial Corporation of Santa Barbara, Imperial Savings, and others;

c. Defense contractor over-billing cases, including Lockheed, General Dynamics, and Rockwell International;.

d. A number of health care provider cases including National Health Laboratories, National Medical Enterprises, ICN Pharmaceuticals, and Pfizer;

e. Cases against insurance companies including Blue Cross of California, and First Executive Life and its progeny; and

f. Many other class and derivative actions including L.A. Gear, Countrywide Trucking, and Glen Ivy timeshares, among others.

6. I have also been lead or co-lead counsel in many other class actions or Business & Professions Code representative actions since I opened my own office in 2001.  Most of those are consumer-related cases.  These included my role as either lead or co-lead plaintiffs' counsel in the following class or 17200 representative actions, including Telephone Consumer Protection Act cases:

a. <u>Gonzalez, et. al., v. Science Applications International Corporation, et. al.</u>;

b. <u>Warner, et al. v. Computer Education Institute, et al.</u>,

c. <u>Smith v. Microskills</u>;

d. <u>Russell, et al., v. DAT, Inc. dba Laptop Training Solutions</u>;

e. <u>Jared Smith vs. Independent Capital Management, Inc., et al.</u>;

f. <u>Opyrchal, et al., v. New York Life</u>;

g. <u>Bowersox v. Laboratory Corporation of America</u>;

h. <u>O'Neal v. NCO Financial Systems, Inc.</u>;

i. <u>Zamora v. Conseco, et. al.</u>;

j. <u>Kryptonite Locks Coordinated Litigation</u>;

1.     k. <u>Shaw v. Tenet Healthcare Corporation, et al.</u>;
2.     l. <u>Rodriquez v. Yum Yum Donut Shops, Inc.</u>;
3.     m. <u>Arnn, et al., v. West Coast Aquarium Industries, Inc.</u>;
4.     n. <u>Grant v. American Agencies, Inc.</u>;
5.     o. <u>Rogers v. Whitney Education Group</u>;
6.     p. <u>Khosorabi v. North Shore Agency, Inc.</u>;
7.     q. <u>Cook v. Collins, et al.</u>,
8.     r. <u>Goins v. Checks Cashed for Less, Inc., et al</u>;
9.     s. <u>Kight v. Eskanos & Adler, P.C.</u>;
10.     t. <u>Gulzynski v. Fidelity Title</u>;
11.     u. <u>Kight v. CashCall</u>;
12.     v. <u>Grannan v. Direct Electronics, Inc.</u>;
13.     w. <u>Charles Smith, et al., v. CRST Expedited</u>;
14.     x. <u>American Apparel, Inc. Derivative Litigation</u>;
15.     y. <u>Meeks v. CreditWest, et. al.</u>;
16.     z. <u>Malta v. Wells Fargo</u>;
17.     aa. <u>Robinson v. Midland Funding, LLC</u>;
18.     bb. <u>Bennett v. Discover Bank</u>;
19.     cc. <u>Dominici v. Wells Fargo</u>;
20.     dd. <u>Hurtado v. Progressive Financial Services</u>;
21.     ee. <u>Galbraith v. Resurgent</u>;
22.     ff. <u>Underwood v. San Diego Flight Training, Inc.</u>;
23.     gg. <u>Sarabi v. Weltman, Weinberg & Reis Co., LLP.</u>;
24.     hh. <u>Lo v. Oxnard European Motors, Inc.</u>;
25.     ii. <u>Allen v. Portfolio Recovery, Inc.</u>
26.     jj. <u>Maier v. J.C. Penney, Inc.</u>
27.     kk. <u>Sojka, et. al. v. Direct Buy, Inc.</u>
28.     ll. <u>Johnson v. Bennett Law</u>

  mm. Hoffman v. Bank of America

  nn. Becerra v. National Recovery Solutions, LLC

  oo. Dailey v. John D. Bonewicz, PC

  pp. Burge v. Pinnacle Financial Group, Inc.

  qq. Blair v. CBE Group

7. I have also had several state court appellate court opinions published in which our side prevailed and for which I was counsel of record and responsible for the appellate work. Those include *CashCall, Inc. v. Superior Court* ("*CashCall I*") (2008) 159 Cal. App. 4th 273; *Smith v. Microskills San Diego L.P.* (2007) 153 Cal. App. 4th 892; and *Kight v. CashCall* (2011) 200 Cal. App. 4th 1377 ("*CashCall II*"). The *CashCall I* case expanded the rights of putative class members to obtain pre-certification class member discovery to subsitute a new class represenative, even when the named plaintiffs had no standing to itially bring the action. In the *Microskill*s case, the Court of Appeal limited the ability of the defendant vocational school, a third party to an arbitration agreement between the plaintiff student and the student loan lender, to compel a plaintiff to arbitrate their case against the school. The *CashCall II* case reversed summary adjudication and set forth new law in the field of privacy rights, including eavesdropping.

8. Therefore, my experience and years in practice are sufficient to justify my hourly billing rate in this case of $675 per hour.

A. **EXPERIENCE RELEVANT TO THE TELEPHONE CONSUMER PROTECTION ACT**

9. I have filed and litigated many other class actions based on the Telephone Consumer Protection Act in the past seven years. I have been lead counsel, liaison counsel or class counsel in the TCPA cases obtaining the largest

monetary and non-monetary settlements to date. As detailed below, those include this case, settled in excess of $32,000,000; the *Wells Fargo* mortgage and auto loan robocalling case, settled in excess of $17,000,000; *Arthur v. Sallie Mae*, settled in excess of $24,000,000; *In Re Jiffy Lube*, settled for certificates/cash, with the certificates valued over $40,000,000 in value, with a reduced cash value if redeemed for cash; and the *AllianceOne* case, with a settlement of more than $9,000,000..

10. The following is a partial list of the TCPA class actions which I am or have been personally involved in:

   a. *In Re Jiffy Lube Int'l, Inc. Text Spam Litigation*, MDL Case No. 2261, Master Case No. 3:11-MD-02261 – JM- JMA (liaison counsel) (largest combined monetary and certificate for services case to date, approx. $45,000,000 value);

   b. *Bellows v. NCO Financial Systems, Inc.*, 07-CV-01413 W(AJB) (S.D. Cal)(One of the first class action settlements under the TCPA in the nation; Hyde & Swigart served as co-lead counsel; final approval grated in 2009);

   c. *Adams v. AllianceOne, Inc.*, 08-CV-0248 JAH (S.D. Cal) (Nationwide TCPA class settlement providing class relief of $40 per claiming class member resulting in over $2,500,000 paid to claiming class members; final approval granted in 2013);

   d. *Lemieux v. Global Credit & Collection Corp.*, 08-CV-1012 IEG(POR) (S.D. Cal.)(Co-lead counsel on a national TCPA class settlement providing class recovery in the amount of $70 for each claiming class member; final approval granted in 2011);

   e. *Malta, et al. v. Wells Fargo Home Mortgage, et al.*, 10-CV-1290 IEG(BLM)(Served as co-lead counsel for a settlement class of borrowers in connection with residential or automotive loans and violations of the

TCPA in attempts to collect on those accounts; obtained a common settlement fund in the amount of $17,100,000 which was the second largest TCPA settlement at the time, second only to the *Sallie Mae* settlement; final approval granted in 2013);

  f. *Connor v. JPMorgan Chase Bank, et al.*, 10-CV-1284 DMS(BGS) (S.D. Cal.)(Currently serving as co-lead counsel for the settlement class of borrowers in connection with residential loans and TCPA violations stemming from the collection of those accounts); has turned into a bifurcated proceeding with a settlement of the first part in an amount between $7,000,000 and $9,000,000);

  g. *In Re: Midland Credit Management, Inc., Telephone Consumer Protection Act Litigation*, 11-md-2286 MMA(MDD) (S.D. Cal.) (Co-lead counsel) (Counsel for a Plaintiff in the lead action, prior to the action being recategorized through the multi-district litigation process; the case is still actively proceeding in the MDL litigation and settlement/mediation process);

  h. *In Re: Portfolio Recovery Associates, LLC Telephone Consumer Protection Act Litigation*, 11-md-02295-JAH(BGS)(Counsel for a Plaintiff in the lead action, prior to the action being recategorized through the multi-district litigation process; still actively involved in the MDL litigation and settlement process);

  i. *Arthur v. SLM Corporation*, 10-CV-00198 JLR (W.D. Wash.)(Nationwide settlement achieving the then-largest monetary settlement in the history of the TCPA: $24,115,000; final approval granted in 2012)

  j. *Lo v. Oxnard European Motors, LLC, et al.*, 11-CV-1009-JLS-MDD (S.D. Cal.)(Achieving one of the highest class member payouts in a TCPA action of $1,331.25; final approval granted in 2012);

k. *Sarabri v. Weltman, Weinberg & Reis Co., L.P.A.*, 10-01777-AJB-NLS (S.D. Cal.)(Approved as co-lead counsel and worked to obtain a national TCPA class settlement where claiming class members each received payment in the amount of $70.00; final approval granted in 2013);

l. *Mills v. HSBC Bank Nevada, N.A.*, Case No. 12-CV-04010-SI (N.D. Cal.);

m. *Robbins, et al. v. Coca Cola Co.,* Case No. 13-cv-00132 – IEG –NLS (S.D. Cal.) (Decision often cited on pleading standards on motions to dismiss in TCPA actions);

n. *Maier v. JC Penney*, Case No. 13cv0163 IEG (DHB) (S.D. Cal.) (Favorable ruling obtained on requirements for pleading the use of an automatic telephone dialing system; also obtained a separate ruling rejecting the application of Rule 68 offers in the Ninth Circuit).

11. The cases listed above which have settled (*Mills, Robbin*s and *Maier* are still pending) , have resulted in the creation of combined common funds to class members in the tens of millions of dollars.  I am proud of my record in the above cases that resulted in substantial settlements for consumers.

## II. OVERVIEW OF LAW OFFICES OF DOUGLAS J. CAMPION, APC'S EFFORTS IN THIS ACTION

### CONTINGENT NATURE OF ACTION

12. This *Rose* action was filed May 16, 2011.  The original case was filed with my co-counsel Anthony J. Trepel's law firm.  However, that firm withdrew early in the proceeding and Lieff, Cabraser, Heimann & Berstein, LLP became co-counsel with me on the *Rose* case several months later.  The original complaint alleged that Bank of America and its wholly owned subsidiary FIA Card Services, N.A. violated the TCPA by

calling Plaintiff Rose and others on their cell phones regarding their credit card payments.

13. The *Johnson* action (Case No. 11-cv-03040-H-BGS) was filed on December 29, 2011. *Johnson* alleged Bank of America violated the TCPA by calling people on their cellphones about their mortgage debts. The *Ramirez* Action, the *Johnson* Action and the *Makin* Action, the mortgage-related TCPA cases, were later consolidated with the *Rose, Duke and Poster* actions, and later the *Bradshaw* action, for purposes of settlement. This matter required me to spend time over the past three years on this consolidated litigation that could have been spent on other matters. My firm has not been paid anything for our work on these cases since they were filed. It is my opinion that law firms in such a position expect to receive a multiplier in cases such as these because of the risk taken, the extent to which firms are unable to take on other cases, the delay in getting paid and the costs we have to advance. At various times during the litigation of this class action, this lawsuit has consumed my time as well as my firm's resources.

## III. LODESTAR

14. My firm has maintained contemporaneous time records since the commencement of this action. Those time records reflect only my time spent on the case, as I have not had any other attorney working on this case for my firm. I have worked a total of 350.30 hours in this action, with a total lodestar of $235,937.50.[1]

   i. I have kept contemporaneous time records reflecting the time spent on this and other matters. My time records are kept in 1/10 of an hour increments.

---

[1] The hourly rate sought and used in this lodestar calculation is $675, based upon my almost 37 years in practice, and is an amount that has been approved and awarded in other cases.

    ii. I did not include any time spent working on Plaintiffs' Motion for Award of Attorneys' Fees and Costs, or this supporting declaration, within the lodestar reported above. I have included time needed to prepare the declarations of Stephenie Rose and Freddericka Bradshaw, however. I have also included the time necessary to make certain all the costs incurred in the case were accurate and correctly characterized.

    iii. My firm's lodestar will grow as we continue to finalize the settlement process and close the litigation. The claims period will last for several months, and my commitment of time and labor to this case will continue until (and likely beyond) that date. I will continue to assist Class members with individual inquiries, will oversee the claims resolution process, and Class Counsel will help resolve Class member challenges to the result of their claims submissions. Judging by previous experiences, these responsibilities will require hundreds of hours of work by Class Counsel over the coming months.

## IV. MY FIRM'S COSTS INCURRED FOR THIS LITIGATION

15. I maintain all books and records regarding costs expended on each case in the ordinary course of business, which books and records evidence which checks have issued on each case and/or which accounts payable are associated with each matter. I have reviewed the records of costs expended in this matter.

16. My firm has incurred the following "non-expert" costs in the litigation of the *Rose* and *Bradshaw* actions: $4,392.10.

17. That amount is broken down generally as follows:

    (1) Travel-related expenses to attend two mediation sessions in San Francisco: $1,339.54;

    (2) Travel-related expenses for two depositions, in Dallas, TX and in Philadelphia, PA: $1,199.11;

|   |   |
|---|---|
| 1 | (3) Travel-related expenses for two Court hearings, on |
| 2 | September 13, 2013 and on November 8, 2013: $1.153.45; |
| 3 | (4) Filing fees for *Rose* and for *Bradshaw* @ $350 each: |
| 4 | $700.00. |
| 5 | 18.   That amount does not include the separate costs incurred and which will |
| 6 | be paid by me for the Information Technology Consultant Hansen & |
| 7 | Levey Forensics, Inc. in the amount of $6,158.33, giving credit for the |
| 8 | $3,000 retainer paid, $1,000 each by my firm, Hyde & Swigart and The |
| 9 | Kazerouni Law Group, APC, as detailed in each of their declarations. |
| 10 | They have each asked for such reimbursement of their respective $1,000 |
| 11 | contributions in those declarations.   The entire Hansen & Levey |
| 12 | Forensics, Inc. bill was $9,158.33.   Their services began on January 26, |
| 13 | 2012 and were rendered through June 30, 2013, totaling 36.63 hours at |
| 14 | $250 per hour for forensics services.  Those services included organizing |
| 15 | and analyzing the data provided by Bank of America in this case in order |
| 16 | to determine the number of calls made, including the number of calls |
| 17 | made to cell phones, and to determine the number of persons in the |
| 18 | Class. I am asking that the Court reimburse me for the $1,000 for my |
| 19 | share of the $3,000 retainer, and the additional $6,158.33 that I am |
| 20 | paying Hansen & Levey, Inc. for their services, for a total reimbursement |
| 21 | to me for their bill of $7,158.33. |
| 22 | 19. Thus, I am seeking approval of the Court for reimbursement from the |
| 23 | Settlement Fund in the total amount of $11,550.43. |
| 24 | **REASONABLENESS OF HOURLY RATES** |
| 25 | 20. My hourly rates are reasonable in respect to the ranges charged by |
| 26 | comparable law firms in the State of California. My hourly rate charged in |
| 27 | this matter is $675. That hourly rate has been approved a number of times, |
| 28 | most recently in in the class action settlement of *Malta v. Wells Fargo* |

*Home Mortgage*, 10-CV-1290-BEN(NLS) [Dkt. 92]. I have practiced for almost 37 years in California and have litigated class actions since 1989, over 24 years. Attorneys with my experience often bill at much higher hourly rates. My experience set forth above confirms the reasonableness of my hourly rate sought.

**OVERVIEW OF WORK PERFORMED**

21. To provide the Court with an overview of the work I have done in this case without requiring the review of the lengthy time records themselves, I have divided my firm's work into specific phases that track the progress of the litigation from our initial investigation through settlement and claims administration. The categories of work identified cross over into both the *Johnson* and *Rose* actions, and all of the cases consolidated for purposes of mediating a settlement.

22. *Initial Case Investigation and Initial Case Filing Efforts*. In that phase I spent 32.90 hours through the filing and answering the *Rose* complaint. That investigation included the following: Conducting extensive factual and legal research into the merits of the TCPA claims; discussing the facts with my client; conducting research on the Defendants and subsidiaries including whether Defendants had been investigated for any prior TCPA violations; discussing joint prosecution of the action with other counsel; and this includes everything prior to engaging in discovery.

23. *Initial Discovery and Litigation Phase:* I spent 70.80 hours in that phase, which included all the effort in litigating and conducting discovery, prior to reaching an agreement with defense counsel wherein the parties agreed to consolidate the many cases and pursue a mediated settlement. That phase included discovery and all discovery-related litigation, including having my IT person reviewing data provided by Defendant and I reviewed the many pages of documents provided by Defendant in

discovery. We provided discovery responses to Defendant, including interrogatory responses and documents, as well as conducting meet and confer conferences.

24. *Mediation and Mediation-Related / Confirmatory Discovery Phase:* I spent the bulk of my time in this phase, 192.40 hours, as it encompassed approximately a year's time, from the time the parties decided to pursue a mediated settlement until the final settlement agreement was signed. During this time the parties were attempting to sort through the data in all cases to determine the extent of the Class, and how many cell phone calls were made and how many text messages were sent to Class members. This phase required many formal and informal (telephonic) sessions with the mediator Judge Infante, and confirmatory discovery, including interrogatories and data production, and many confirmatory depositions around the country by Plaintiffs' counsel.

25. *Post-Settlement, Obtaining Preliminary Approval and Overseeing Settlement Administration.* I have incurred 57.10 hours to date in this phase. In this phase, we have prepared the Settlement documents, prepared the Preliminary Approval papers, finalized the relationship with the claims administrator, reviewed and revised claims and notice documents, worked through the notice and claims administration process and generally implemented the terms of the Settlement. I have discussed the Settlement with a number of Class members and answered questions from Class members and also directed persons to the claims administrator as part of the process.

**INCENTIVE PAYMENTS FOR ROSE AND BRADSHAW**

26. The Settlement Agreement which was approved by the Court at Preliminary Approval, permits each named Class representative to be awarded the sum of $2,000 as an Incentive Award for their efforts in

PLAINTIFFS' MOTION FOR ATTORNEYS'
FEES AND INCENTIVE AWARDS
21811481.1                           13                      5:11-CV-02390-EJD (PSG)

bringing and in litigating this case, subject to approval of the Court.  I submit Stephenie Rose has worked with me diligently prior to and throughout this case and assisted me whenever I called on her to do so, and is entitled to the $2,000 Incentive Award.

27. It was Stephenie Rose that was responsible for the filing of the lead case, months before any other cases were filed.  I personally worked with her prior to filing, and had discussions with her several times during that period.  I requested that she search for records of bills and any phone records she might have, so I could review them before filing. She did so, and continued to do so throughout the case, including going through many boxes of old papers in order to properly response to the Defendants' document requests.

28. Ms. Rose also searched for, located and provided some of her old phone bills and billing statements from years before, all in assisting me with this case.   She worked with in in responding to interrogatories and document requests, reviewed drafts and verified them.

29. Defendant did not take her deposition, presumably because they knew her involvement from their records, but Ms. Rose would have been available to provide deposition testimony if she was asked to do so.

30.  This case began with our discussions in 2010.  Ever since then, I have informed her of the progress in the case, and have kept her informed about the many procedural matters we have seen, including the consolidation of the cases for mediation and settlement.

31. When the case was going to settle, I informed Ms. Rose and she made herself available and when we provided the Settlement Agreement to her, she reviewed and signed the Settlement Agreement as requested.   She has also filed a declaration in support of our request for an incentive payment to be made to her, and outlined her efforts in that declaration, filed

herewith. I concur with her estimate of time of approximately 30 to 40 hours of effort over the past 3 years.

32. Mr. Dan Shay has detailed the efforts of class representative Ms. Bradshaw in his declaration and in Ms. Bradshaw's declaration filed herewith. Of course Ms. Bradshaw did not engage in the amount of efforts as Ms. Rose, but Ms. Bradshaw in fact provided necessary efforts and information working with Mr. Shay in filing the case. Her case was filed very late in this process as the only Class representative receiving text messages. No discovery was requested of her, but just the filing of her case brought about almost immediate results of adding more than $2,000,000 to the Settlement because of the text messages she received. We ask that she be awarded the $2,000 incentive award as well.

I declare under penalty of perjury of the laws of California and the United States that the foregoing is true and correct, and that this declaration was executed in San Diego, CA on February 19, 2014.

**LAW OFFICES OF DOUGLAS J. CAMPION, APC**

By: */s/ Douglas J. Campion*
Douglas J. Campion
Class Counsel

**ATTESTATION**

I, Jonathan D. Selbin, am the ECF user whose identification and password are being used to file this Declaration. I hereby attest that Matthew R. Wilson has concurred in this filing.

*/s/ Jonathan D. Selbin*
Jonathan D. Selbin