Douglas J. Campion, SBN #75381
Email: doug@djcampion.com
LAW OFFICE OF DOUGLAS J. CAMPION
409 Camino Del Rio South, Suite 303
San Diego, California  92108
Telephone: (619) 299-2091
Facsimile: (619) 858-0034

Beth E. Terrell, SBN #178181
Email: bterrell@tmdwlaw.com
TERRELL MARSHALL DAUDT & WILLIE PLLC
936 N. 34th St., Suite 300
Seattle, Washington  98103
Telephone: (206) 816-6603
Facsimile: (206) 350-3528

Attorneys for Plaintiffs and the Proposed Class

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHENIE ROSE, on behalf herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BANK OF AMERICA CORPORATION, and FIA CARD SERVICES, N.A.,<br><br>Defendants. | NO.  5:11-cv-02390-EJD (PSG)<br><br>CLASS ACTION<br><br>**DECLARATION OF BETH E. TERRELL IN SUPPORT OF MOTION FOR RECONSIDERATION** |
| CAROL DUKE AND JACK POSTER, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED,<br><br>Plaintiffs,<br><br>v.<br><br>BANK OF AMERICA, N.A.; BANK OF AMERICA CORPORATION; AND FIA CARD SERVICES, N.A.,<br><br>Defendants. | NO.  5:12-cv-04009-EJD (PSG)<br><br>CLASS ACTION<br><br>Honorable Edward J. Davila<br><br>DATE:<br>TIME:<br>LOCATION:  Courtroom 4, 5th Floor |

DECLARATION OF BETH E. TERRELL - 1
CASE NO. 5:11-CV-02390-EJD (PSG)
CASE NO. 5:12-CV-04009-EJD (PSG)
1195279.1

I, Beth E. Terrell, declare as follows:

1. I am a member of the law firm of Terrell Marshall Daudt & Willie PLLC ("TMDW"), counsel of record for Plaintiffs in this matter. I am admitted to practice before this Court and am a member in good standing of the bars of the states of California and Washington. I respectfully submit this declaration in support of Plaintiffs' Motion for Reconsideration of Order Granting in Part and Denying in Part Motion for Attorneys' Fees and Costs in the above-captioned class action. Except as otherwise noted, I have personal knowledge of the facts set forth in this declaration, and could testify competently to them if called upon to do so.

**My Professional Experience in TCPA Class Actions**

2. TMDW has always worked with no guarantee of being compensated for its time and efforts in this case. Payment of TMDW's fees has always been contingent on successfully obtaining relief for Plaintiffs and Class members. I always believed and understood there was a substantial risk of non-payment. This belief and understanding was based upon past experience in class actions cases, and particularly in other TCPA class actions.

3. My firm has been litigating TCPA class actions since late 2009. We litigate class actions involving debt collection – such as this case – as well as telemarketing cases. And we litigate class actions against small, medium, and large companies. Courts tend to scrutinize these cases carefully, often dismissing meritorious cases, refusing to certify classes on the basis of "individualized consent" issues, and rejecting the concept of statutory damages as violating companies' due process rights. We often have to expend substantial time and money engaging in third-party discovery to establish the violations because defendants have either outsourced the illegal calling, texting, or faxing to small, often overseas companies that do not retain records, or they simply lie about their own data systems and capabilities.

4. Courts have recently denied class certification in several of our TCPA class actions. In *Gannon v. Network Telephone Services, Inc.,* 2:12-cv-09777-RGK-PJW (C.D.

DECLARATION OF BETH E. TERRELL - 2
CASE NO. 5:11-CV-02390-EJD (PSG)
CASE NO. 5:12-CV-04009-EJD (PSG)
1195279.1

Cal.), the court denied our motion for class certification even though the overarching legal issue in the case is whether placing a call to a company from a cellular telephone constitutes consent to be robotexted at that number. *See* Gannon Dkt. # 72. We have appealed the court's order and the briefing was recently closed. Similarly, in *Southwell et al. v. Mortgage Investors Corp.*, 2:13-cv-01289-MJP (W.D. Wash.), we sued a company that had already been fined $7.5 million by the FTC for illegally robocalling millions of veterans. Overlooking those millions of illegal telemarketing robocalls, the court accepted defendant's version of the facts – which was unsupported by its own records – and denied our motion for class certification, finding that the class lacked numerosity, among other things. *See* Southwell Dkt. # 189. We plan to appeal that ruling as well. In both cases, the court appeared hostile to our claims from the outset and the defendants benefited by delaying discovery.

5. In addition, a court granted summary judgment in one of our robocalling cases brought under the Washington state analog to the TCPA, requiring us to seek appellate review and have the trial court's decision reversed. *Chesbro v. Best Buy,* 2:10-cv-00774-RAJ (W.D. Wash.). In *Best Buy*, the court threw out our case, finding that pre-recorded messages that reminded customers that their reward zone points were about to expire and encouraging them to visit the store to redeem them were not "solicitations." Chesbro Dkt. # 61. It was several years before we succeeded in reversing the trial court and finally resolved the case on a class-wide basis. Final approval is pending.

6. Because our named plaintiffs are entitled to statutory damages under the TCPA, defendants often make substantial Rule 68 offers of judgment in order to "pick off" our plaintiff and prevent the case from proceeding as a class action. This tactic has been employed successfully by many defendants to escape class-wide liability for illegal robocalling. Defendants also often delay cases for months or years by invoking the doctrine of primary jurisdiction – arguing that a petition in front of a regulatory agency such as the FCC must be

DECLARATION OF BETH E. TERRELL - 3
CASE NO. 5:11-CV-02390-EJD (PSG)
CASE NO. 5:12-CV-04009-EJD (PSG)
1195279.1

disposed of before our case can proceed. This occurs even when none of the pending petitions actually encompass any of the issues in our case.

7. We spend substantial time and money investigating TCPA claims before we file them. However, even with the benefit of years of litigating these cases, it is almost impossible to determine from the outset whether a case will "have legs," be dismissed, result in protracted litigation or a quick resolution, etc. For example, in the *Ramirez* case, which my firm originally filed with the Ankcorn Law Firm, we engaged in contentious, lengthy, and unproductive discovery conferences until we took a 30(b)(6) deposition which revealed that, contrary to what its counsel had been representing, Bank of America could produce the calling data we had requested. Even after we knew the data could be obtained, we fully expected Bank of America to litigate its consent defense. Resolution was never assured, and we were fully prepared to litigate this case through dispositive motions and trial.

**The *Ramirez* Case**

8. On August 31, 2011, I and co-counsel from the Ankcorn Law Firm, filed the *Ramirez* complaint against Bank of America, N.A. Neither I nor Mr. Ankcorn informed *Rose* counsel of the *Ramirez* action prior to filing, nor did *Rose* counsel participate in any aspect of the *Ramirez* litigation.

9. In July 2012, attorneys from Lieff, Cabraser, Heimann & Bernstein, LLP ("LCHB") approached me to discuss their intention to file a separate action against Bank of America challenging both credit card and mortgage calls. Even though the cases involved two separate companies with different documents, data, and witnesses, LCHB shared their belief that a new proceeding would be more efficient and provide a vehicle through which the cases could be addressed together, given the overlap between the *Rose* and *Ramirez* classes. I supported LCHB's decision, but was clear that *Rose* counsel would play no role in our prosecution of mortgage calls.

10. Attached hereto as Exhibit A are true and correct copies of excerpts from the deposition of Laura Guidici, Bank of America, N.A.'s Vice President, Technology Manager who I deposed on June 28, 2012.

11. In late 2011 or early 2012, months after the *Ramirez* action was filed, the mortgage servicing telephone calling policies changed radically. Bank of America identified cell phone numbers on a systematic basis, placed those numbers on a "suppression table" to prevent calling via an auto-dialer, and undertook a process by which specific, separate consent was obtained from the borrower before the number was again eligible to be auto-dialed. Guidici Depo., 172:24-173:20. Bank of America also used information obtained from cellular carriers to identify cellular telephone numbers for suppression on a system-wide basis. Guidici Depo., pp. 174:9-175:18.

12. Although I did not participate actively in the *Rose* litigation, I have become familiar with Bank of America's credit card calls through my work on the global settlement. The credit card and mortgage calls at issue involved separate defendants, separate policies, separate practices, separate documents, separate data, and separate witnesses. I am not aware of even a single document that was produced in both cases. It is therefore my view that the *Rose* and *Ramirez* cases would have required separate discovery regardless of whether the cases were joined at an earlier date.

**The Costs of Notice and Claims Administration**

13. The costs for Settlement Administrator's hard costs for notice and claims administration exceeded their initial projection due to: (1) greater than anticipated data clean-up and de-duplication efforts; (2) a higher than expected Email Notice undeliverable rate; and (3) higher-than-expected Class member correspondence rates. *See* Dkt. No. 74-11 at ¶ 39. Class counsel nonetheless negotiated a hard cap of $3,600,000 on Court-approved payments for notice and claims administration, even though that amount is substantially less than the Settlement Administrator's normal billing rates.

DECLARATION OF BETH E. TERRELL - 5
CASE NO. 5:11-CV-02390-EJD (PSG)
CASE NO. 5:12-CV-04009-EJD (PSG)
1195279.1

**The *Sallie Mae* Settlement**

14. The Honorable James L. Robart awarded attorneys' fees of approximately 24% of the original $19.5 million settlement in *Arthur, et al. v. Sallie Mae, Inc.*, No. C10-0198 JLR (W.D. Wash.). Following the identification of additional Class members after preliminary approval, the total common fund there was increased to $24.15 million. Class counsel in the *Sallie Mae* case did not request any fees on the upward adjustment, which resulted in a lower ultimate percentage being awarded. Nonetheless, the final percentage there, even absent any fee from the additional $4.65 million, was approximately 20%.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

EXECUTED at Seattle, Washington this 15th day of September, 2014.

        /s/ Beth E. Terrell, SBN #178181
        Beth E. Terrell, SBN #178181

DECLARATION OF BETH E. TERRELL - 6
CASE NO. 5:11-CV-02390-EJD (PSG)
CASE NO. 5:12-CV-04009-EJD (PSG)
1195279.1