# EXHIBIT A

```
 1                "C O N F I D E N T I A L"

 2              UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF CALIFORNIA
 3

 4    STEPHENIE ROSE, on behalf      )
      of herself and all others      )
 5    similarly situated,            ) NO. CV 11 02390
              Plaintiffs,            ) EJD
 6             v.                    )
      BANK OF AMERICA                )
 7    CORPORATION, and FIA CARD      )
      SERVICES, N.A.,                )
 8            Defendants.            )
      ---------------------------x   )
 9    CAROL DUKE and JACK            )
      POSTER, on behalf of           ) NO. CV 12 04009
10    themselves and all others      ) EJD
      similarly situated,            )
11            Plaintiffs,            )
               v.                    )
12    BANK OF AMERICA                )
      CORPORATION, and FIA CARD      )
13    SERVICES, N.A.,                )
              Defendants.            )
14

15              DEPOSITION OF DANA WASSAM

16              PHILADELPHIA, PENNSYLVANIA

17                   JANUARY 9, 2013

18

19

20

21

22

23

24    REPORTED BY:
      SILVIA P. WAGE, CCR, CRR, RPR
25    JOB NO. 56924
```

Page 71

1             CONFIDENTIAL - DANA WASSAM

2  therefore eligible to be passed to the dialer for

3  that particular phone number.

4        If consent is not identified in one of the

5  three data sources, then an indicator is added to

6  the account to denote that they cannot receive

7  automated contact attempts on their mobile

8  number.

9        And, when the dialer lists are built, that

10  indicator is one of the inputs to determining

11  which accounts and phone numbers for the account

12  are eligible to be passed to the auto dialer.

13        Q.  I see. It is a complicated process.

14        A.  It is.

15        Q.  Okay. Going back to the first step,

16  and I, again, was trying to write while you were

17  talking. I hope I tried to keep up with you

18  there.

19        But you said you reviewed the numbers.

20  What do you mean by reviewing the numbers, is

21  this done with each campaign or on a monthly

22  basis, on a yearly basis?

23        A.  There is a daily process that's run

24  to evaluate all of the delinquent account

25  inventory for credit card accounts.

```
 1                CONFIDENTIAL - DANA WASSAM
 2          Q.   For all the accounts?
 3          A.   All delinquent accounts.
 4          Q.   All delinquent accounts.
 5        That could be in the millions?
 6          A.   It could.
 7          Q.   It's a lot of accounts, but you do
 8   that every day?
 9          A.   Uh-huh.
10          Q.   Okay.  You have to say yes.
11          A.   Yes.
12          Q.   Thank you.
13        Okay.  So every day they review the
14   numbers and every day they compare that to the
15   Telecordia data?
16          A.   Yes.
17          Q.   And that's all done by computers I
18   take it?
19          A.   It's done systemically.
20          Q.   Okay.  And you said if it's a mobile
21   number that's on the list, three data sources are
22   consulted.  Which sources are those?
23          A.   The original account data provided at
24   the time of credit card application, on-line
25   banking data and there's also a table within
```

1     CONFIDENTIAL - DANA WASSAM

2     Report Net that houses consent obtained during

3     verbal conversations with customers through the

4     collections process.

5          Q.   And so when you say, they review the

6     original account data, would that be like an

7     application?

8          A.   Yes.

9          Q.   Would there be any other account data

10    besides the application that you're talking

11    about --

12         A.   No.

13         Q.   -- in that original category?

14         A.   No.  Sorry, I did say, no.

15         Q.   And I want to make sure she got the

16    end of the question.  Thank you.

17              And, in the application, can you tell me

18    what field or box or area would be looked at to

19    determine whether or not consent was obtained?

20         A.   In the card terms and agreements, the

21    customer is notified that we will use any numbers

22    they provide for auto dial.  So any of the phone

23    number fields on the application are eligible for

24    consideration.

25         Q.   So, if on the application they listed

1                CONFIDENTIAL - DANA WASSAM

2    space, there is a specific notification.

3           The other place is related to their

4    overall relationship with the bank.  I do not

5    know if there's specific verbiage in that

6    location.  But, again, our account terms and

7    agreements do notify the customer that any number

8    they provide will be used for auto dial as well.

9           Q.  Okay.  So it goes back to the card

10   terms and agreements, even if there's nothing

11   specific in the on-line banking?

12          A.  Again, I do not know in -- I

13   mentioned there are two locations within on-line

14   banking.  One I know has specific verbiage.  The

15   other I'm not certain whether it does have

16   specific verbiage or not.

17          Q.  Okay.  You said in 2012 that was

18   added.  Prior to 2012 --

19          A.  The collections functionality,

20   specifically, was launched in 2012.  Customers

21   have been able to provide updated profile

22   information on on-line banking as long as I've

23   been familiar with on-line banking.

24          Q.  Okay.  And it's just in 2012 they

25   were notified, specifically, as to the

Page 76

| | |
|---|---|
| 1 | CONFIDENTIAL - DANA WASSAM |
| 2 | collections function that if the cell phone was |
| 3 | provided, you would be allowed to contact them |
| 4 | via an auto dialer on their cell phone? |
| 5 | A.  Within the collection pages, yes. |

6      Q.  Okay.  And I think the third area you

7  said that if it's reported in a table in Report

8  Net that a collection agent has contacted or

9  spoken to the call recipient and at some point

10  they have told them verbally that it's okay to

11  contact them on the cell phone or they've given

12  them the cell phone; is that your testimony?

13      A.  That's correct.

14      Q.  Okay.  Just so I'm clear, if the

15  person calling the cell phone just gave the cell

16  phone number in response to a request that, you

17  know, what is your cell phone number, and they

18  gave the cell phone number, is there any other

19  admonition or warning to the call recipient that

20  you understand that we can now call you with an

21  auto dialer?

22      MR. REIDY:  Lacks foundation, beyond

23  the scope.

24      Go ahead and answer it, if you can.

25      A.  I don't know if I fully understand

1        CONFIDENTIAL - DANA WASSAM
2   our resources in trying to contact customers who
3   we know have a high likelihood to pay anyway.
4        So, while it may be eligible to be sent to
5   the auto dialer, our strategy will not result in
6   it being sent because we do not want to spend the
7   bank's resources on someone who will self-cure.
8        Q.  Makes sense.
9        Okay.  Are there any other factors besides
10  the risk factors that would relate to perhaps the
11  type of consent or how the consent was obtained
12  that would determine whether or not you may or
13  may not send it to the auto dialer?
14       A.  There are a number of other factors
15  that would be used to determine if it's sent to
16  the auto dialer.  Those related to consent are
17  the ones I've already described.
18       Q.  Okay.  And if somebody calls and
19  says, you know, I don't want you to call my cell
20  phone anymore with an auto dialer, even though
21  it's been eligible on Day 1, but on Day 2 they
22  call and say, don't do this anymore, I don't want
23  you to do it, then on Day 3 would that analysis
24  be done and would that number be taken off the
25  eligible list?

1          CONFIDENTIAL - DANA WASSAM

2     A.   The number would be taken off of the

3   eligible list.  Based on the timeline that you

4   just described, it may not be that exact timeline

5   because it may depend on the time of day that the

6   customer notified us --

7     Q.   Okay.

8     A.   -- of their desire to change their

9   consent and based on the timing with which all of

10  the bank's core systems are updated from a -- we

11  internally refer to it a file maintenance

12  perspective on an nightly basis.

13       The customer may request to change that

14  consent or tell us to stop calling them on any

15  number, mobile or landline, after the nightly

16  processing has already started.  So it may not be

17  applied on Day 3, as you describe, but it would

18  be applied on Day 4, in that example.

19    Q.   Okay.  And so that's one of the

20  reasons why you do this on a daily basis --

21    A.   That's correct.

22    Q.   -- to make certain you get not only

23  the eligibility but the people that have declined

24  or revoked the consent at some point?

25    A.   That's correct.

1             CONFIDENTIAL - DANA WASSAM

2    regulation that you knew of and --

3         A.   We had a procedural change within our

4    business, which I described previously in the

5    testimony.

6         Q.   Thank you.  That clears it up.  I

7    appreciate it.

8              And, prior to that system going into

9    place, in or about July 2011, when an agent, a

10   collection agent, would speak to an account

11   holder about the phone, the cell phone, the

12   consent, the lack of consent or whatever, were

13   there any policies or procedures in place that

14   directed them to take certain action or engage in

15   certain conduct regarding whether or not consent

16   was given to be called on a cell phone by an auto

17   dialer?

18        A.   Not to my knowledge.

19        Q.   Okay.  I understand there is a

20   13-month retention period for consent information

21   prior to July 2011; is that accurate?  Does that

22   make any sense to you?

23        A.   We had prior to the legal hold notice

24   that was received for this case a 13-month

25   retention period for our dialer data.

```
 1              CONFIDENTIAL - DANA WASSAM
 2   data was?
 3         A.   I don't believe that I've testified
 4   nor do I believe that Paul testified that our
 5   associates were educated to request consent
 6   before July 2011.
 7         Q.   Okay.
 8         A.   So what conversations are you
 9   referring to before July 2011?
10         Q.   There are account notes for each
11   account, right?
12         A.   There are generally account notes on
13   the system of record.
14         Q.   Okay.  And, in the account notes,
15   isn't that a place where it would indicate
16   whether or not the person -- the account holder
17   would provide consent to be called on their cell
18   phone on occasion; isn't that where it was
19   maintained prior to July 2011?
20         A.   If the associate happened to have a
21   conversation that said, may we call you on your
22   cell phone number, they may have put it in the
23   notes.
24         Q.   Okay.
25         A.   But we didn't instruct our associates
```

1  CONFIDENTIAL - DANA WASSAM
2  to follow any specific procedures to request
3  consent specific to an auto dialer because we
4  weren't retaining that information in a manner
5  that could be systemically utilized to pass the
6  data to the auto dialer.
7       Q.  Fair enough.  That answers the
8  question for me.  Thank you.  It clears it up for
9  me.
10       Bear with me.  I'm an outsider looking
11  into your system and trying to understand it.
12       And I understand the Report Net
13  information that you've used to compile the data
14  produced in January and also in earlier discovery
15  requests go back to July 1st, 2010 only, right?
16       A.  That's correct.
17       Q.  And why is it only going back to that
18  date, what's your understanding?
19       A.  As we talked about previously, the
20  retention period for those tables was 13 months.
21  At the time that we received guidance from our
22  legal counsel to begin retaining data, we
23  implemented that change to the retention for the
24  legal hold notice.  And, when that was
25  implemented, it allowed us to retain data from

1 C E R T I F I C A T E

2

3     I, SILVIA P. WAGE, a Certified Court

4 Reporter, Certified Realtime Reporter, Registered

5 Professional Reporter and Notary Public do hereby

6 certify that, pursuant to notice, the deposition

7 of DANA WASSAM, was duly taken at REED SMITH,

8 LLP, One Liberty Center, 1650 Market Street, 24th

9 Floor, Philadelphia, Pennsylvania on Wednesday,

10 January 9, 2013, at 10:06 a.m. before me.

11     The said witness, DANA WASSAM, was

12 first duly sworn by me according to law to tell

13 the truth, the whole truth and nothing but the

14 truth and thereupon did testify as set forth in

15 the above transcript of testimony.  The testimony

16 was taken down stenographically by me.

17     I do further certify that the above

18 deposition is full, complete and a true record of

19 all the testimony given by the said witness.

20 Dated:  January 22, 2013

21

22 _____

23 SILVIA P. WAGE, a Certified Court Reporter,

24 Certified Realtime Reporter, Registered

25 Professional Reporter and Notary Public